[No. C002272. Third Dist. Apr. 26, 1988.]

WILLIAM COPREN, as County Assessor, etc., Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant;
CAMP FIRE, INC., GOLDEN GATE COUNCIL, Intervener and Appellant.

831

COUNSEL

Orrick, Herrington & Sutcliffe, William F. Alderman, Robert J. Favole and Joseph Decker for Intervener and Appellant.

James W. Laughlin and Daniel F. Gallery for Plaintiff and Respondent.

OPINION

SIMS, J.—In this case, we hold that Revenue and Taxation Code section 214.12 is unconstitutional. (Statutory references are to the Revenue and Taxation Code unless otherwise indicated.)

BACKGROUND

Section 214 provides that property used exclusively for religious, hospital, or charitable purposes, which is owned and operated by community chests, funds, foundations, or corporations organized and operated for religious, hospital, scientific or charitable purposes is exempt from property taxation if certain requirements are met. (§ 214, subd. (a).) This exemption is known as the "welfare exemption." (*Ibid.*)

Appellant Camp Fire, Inc., Golden Gate Council (Camp Fire) is a nonprofit youth services agency which for 37 years has operated Camp Caniya in Sierra County on land owned by the United States Forest Service. Camp Fire has an interest in the camp land pursuant to a permit from the Forest Service. Before 1982, the permit was not recorded in the Sierra County Recorder's Office.

In 1983 plaintiff William Copren, Sierra County Tax Assessor, assessed against Camp Fire $6,480.53 in property taxes, penalties, and interest on its Camp Caniya property for years 1978 through 1982. The assessor relied on Section 261, subdivision (a) which has provided in pertinent part at all relevant times that "as a prerequisite to the allowance of . . . the . . . welfare exemption with respect to taxes on real property, the interest of the claimant in the property must be of record on the lien date in the office of the recorder of the county in which the property is located. Failure of the claimant to establish the fact of such recordation to the assessor constitutes a waiver of the exemption."

Camp Fire began making installment payments on the assessments. However, in 1984 the Legislature enacted section 214.12 which states a retrospective exception to the recordation requirement of section 261, subdivision (a). Section 214.12 provides: "For years prior to 1983, in counties with a population less than 5,000 persons, a claimant, which would have qualified for a welfare exemption with respect to taxes on a possessory interest in publicly owned land or on improvements on land owned by another except for a failure to have that interest of record on the lien date in the office of the recorder of the county in which the property is located, shall be

granted a welfare exemption with respect to that interest or improvements."[1]

When section 214.12 became effective in 1985 (Stats. 1984, ch. 1040, § 2), Camp Fire requested a refund of sums paid and cancellation of the balance of the assessment.

The assessor then brought this declaratory relief action against the State Board of Equalization (Board). The assessor sought a declaration that section 214.12 was unconstitutional because, among other reasons, it conflicted with article XIII, section 6, of the California Constitution which provides: "The failure in any year to claim, in a manner required by the laws in effect at the time the claim is required to be made, an exemption or classification which reduces a property tax shall be deemed a waiver of the exemption or classification for that year."[2]

Camp Fire intervened. The assessor and Camp Fire then brought cross motions for summary judgment. The trial court concluded section 214.12 was unconstitutional because, among other grounds, it violated the proscription of article XIII, section 6.[3]

Judgment was entered and Camp Fire appeals.

## DISCUSSION

■ "'We start with the proposition that the statute comes before us clothed with a presumption of constitutionality.'" (*Capitol Records, Inc.* v. *State Bd. of Equalization* (1984) 158 Cal.App.3d 582, 599 [204 Cal.Rptr. 802], quoting *Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization* (1973) 30 Cal.App.3d 1009, 1016-1017 [106 Cal.Rptr. 867].) "In considering the constitutionality of a legislative act we presume its validity, resolving all doubts in favor of the Act. Unless conflict with a provision of the state or federal Constitution is clear and unquestionable, we must uphold the Act." (*California Housing Finance Agency* v. *Elliott* (1976) 17

---

[1] In 1971, when Government Code section 28020 was last amended, only Mono, Sierra, and Alpine Counties had populations of less than 5,000 persons per county. Data attached to the assessor's motion for summary judgment showed that by 1985 only Sierra and Alpine Counties had populations of less than 5,000 persons per county.

[2] Further references to article XIII, section 6 are to the California Constitution.

[3] The trial court concluded section 214.12 was also unconstitutional because it violated article IV, section 16, subdivision (b) of our Constitution which provides: "A local or special statute is invalid in any case if a general statute can be made applicable." Camp Fire contends section 214.12 violates neither article XIII, section 6, nor article IV, section 16, subdivision (b). Because we conclude section 214.12 violates article XIII, section 6, we need not consider whether it also violates the latter provision.

Cal.3d 575, 594 [131 Cal.Rptr. 361, 551 P.2d 1193]; followed in *County of Sonoma* v. *State Energy Resources Conservation etc. Com.* (1985) 40 Cal.3d 361, 368 [220 Cal.Rptr. 114, 708 P.2d 693].) On the other hand, the separation of powers doctrine mandated by our state Constitution requires that the courts enforce the provisions of our Constitution against legislative acts proscribed therein. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 141 [93 Cal.Rptr. 234, 481 P.2d 242].) Where a statute purports to confer that which the Constitution declares is waived, the presumption of constitutionality is overcome and this court has the duty to invalidate the statute. (See *Barker Bros., Inc.* v. *Los Angeles* (1938) 10 Cal.2d 603, 609 [76 P.2d 97]; *Capitol Records, supra,* 158 Cal.App.3d at p. 598.)

As noted, article XIII, section 6 provides that "The failure in any year to claim, *in a manner required by the laws in effect at the time the claim is required to be made,* an exemption or classification which reduces a property tax shall be deemed a waiver of the exemption or classification for that year." (Italics added.) In years before 1982, section 261, subdivision (a) required, as it does now, that a welfare exemption claimant must have his interest in the exempt property recorded and "establish the fact of . . . recordation to the assessor." Camp Fire attempted to claim the exemption for years in which it did not have its interest in its camp property recorded nor did it establish the fact of recordation to the assessor. Thus, Camp Fire did not claim the exemption in the manner required by the laws then in effect. As a matter of constitutional law, Camp Fire's exemption claim is waived. (Art. XIII, § 6.)

In enacting section 214.12, the Legislature attempted retrospectively to confer a property tax exemption on claimants who did *not* claim it "in a manner required by the laws in effect at the time the claim was required to be made." (*Ibid.*) Thus, the Legislature has attempted to confer by statute that which by the Constitution is waived.

Camp Fire raises a series of contentions in defense of section 214.12 which are unavailing. Camp Fire first contends article XIII, section 6 only precludes legislative modification of the *procedure* of claiming the welfare exemption. Camp Fire claims sections 261 and 214.12 do not alter that procedure; thus, they are unaffected by the constitutional provision. Camp Fire asserts: "The claims procedures are established in §§ 254, 254.5, 255 and 259.5, *not* in § 261." (Italics in original.) Thus, Camp Fire argues "Section 261 stands apart from the statutes regulating procedures for claiming the welfare exemption, and is thus the proper subject of legislative modification" in section 214.12. The argument is unconvincing.

The trial court correctly observed that the Legislature placed section 261, as well as the other cited sections, in the article entitled *"Procedure to*

Claim Exemptions." (Rev. & Tax Code, div. 1, pt. 2, ch. 1, art. 2; italics added; Stats. 1939, ch. 154, pp. 1283-1284; Stats. 1949, ch. 1579, p. 2826.) As we have explained, section 261 requires a claimant seeking a welfare exemption to record his interest and to "establish the fact of . . . recordation to the assessor . . . ." By any reasonable construction, this language sets forth a "manner" of claiming a welfare exemption within the meaning of article XIII, section 6. We may not rewrite the statute to save it from unconstitutionality where its plain language conflicts with a constitutional provision. (*Metromedia, Inc.* v. *City of San Diego* (1982) 32 Cal.3d 180, 186-187 [185 Cal.Rptr. 260, 649 P.2d 902]; see *Mills* v. *Superior Court* (1986) 42 Cal.3d 951, 957 [232 Cal.Rptr. 141, 728 P.2d 211].) Nor may we rewrite the Constitution.

■ Camp Fire relies on section 261, subdivision (a)'s description of recordation as a *"prerequisite."* Camp Fire claims that, as a "prerequisite," section 261 must be satisfied *before* an exemption claim is made rather than as part of the procedure of claiming one. Camp Fire overlooks the statutory language. Section 261, subdivision (a) terms recordation a "prerequisite *to the allowance of* . . . the . . . welfare exemption," not a prerequisite to the claims procedure. (Italics added.) Most if not all of the statutory claims "procedures" may be termed prerequisites to the *allowance* of the exemption. Camp Fire's semantic exercise is unpersuasive.

■ Camp Fire also suggests that, had the Legislature viewed section 261, subdivision (a) as part of the claims procedure it would have made the recordation requirement subject to section 260 which provides that "If any person, claiming any exemption named in this article, fails to follow the required procedure, the exemption is waived by the person." However, Camp Fire does not suggest why the recordation requirement is not subject to section 260. Nothing in the language of either provision so suggests. Indeed, section 261 expressly declares that failure to "establish the fact of" recordation to the assessor (and, necessarily, failure to record in the first place) constitutes a waiver of the claim. Section 261, subdivision (a) is wholly consistent with section 260. Camp Fire's argument fails.

■ Camp Fire next contends section 214.12 is constitutional because it does not purport to address the situation where a person or organization has wholly failed to make a claim for a welfare exemption. In making this argument Camp Fire assumes article XIII, section 6 merely precludes granting relief to anyone who fails to make a timely claim for an exemption. However, the provision's application is much broader than that. It precludes relief to anyone who fails timely to claim an exemption "in a manner required by the laws in effect at the time the claim is required to be made." Although Camp Fire made a timely claim, it did not do so in the manner

then required. Thus, Camp Fire's claim is waived and the Legislature is powerless to breathe new life into it.

■ Finally, Camp Fire claims the legislative history of article XIII, section 6 shows it is inapplicable in the present context. We disagree.

Article XIII, section 6 originated as Assembly Constitutional Amendment No. 32 in 1974. The Appendix to the Assembly Daily Journal for May 16, 1974, contains the following comment to article XIII, section 6 by the Constitutional Revision Task Force on article XIII which drafted the provision: "This Section establishes constitutional authority for existing statutes which relieve individuals and organizations from hardship when an exemption or special classification is lost due to the failure to file for it. [¶] *This provision applies only where a filing of an affidavit is required. Self-executing exemptions and classifications are not affected.* [¶] *Under this provision, relief statutes may be changed, but the changes will have prospective effect only.*" (Italics added.)[4]

Relying on this language, Camp Fire reasons article XIII, section 6 applies "only where a filing of an affidavit is required." Camp Fire contends article XIII, section 6 is inapplicable because section 261, subdivision (a) does not require the claimant to establish the fact of recordation to the assessor *by affidavit.*

Various sections of the Revenue and Taxation Code require one seeking a welfare exemption to file an affidavit giving information required by the Board. (§§ 254, 254.5, 255.) Section 259.5 provides, "The affidavit for the welfare exemption shall show that both the property and the owner meet all the requirements entitling the property to the exemption." While this language is broad enough to encompass a requirement that the recordation of the owner's interest be shown in the affidavit, in this case we have no need to determine whether section 259.5 requires the affidavit to show such recording. The task force comment cited by Camp Fire referred to instances "where a filing of an affidavit is required," in order to distinguish them from "Self-executing exemptions and classifications." The latter are exemptions not requiring the filing of any affidavit at all. (See, e.g., § 254.2 [exemption without affidavit for all property owned by United States and used exclusively for migratory water fowl refuges].) The language cited by Camp Fire therefore distinguishes among generic categories of exemptions according to whether an affidavit must be filed to claim the exemption. The welfare exemption sought by Camp Fire is not self-executing; rather, an affidavit is

---

[4] The task force's report is properly considered in interpreting the constitutional provision. (Cf. *People* v. *Barry* (1987) 194 Cal.App.3d 158, 174 [239 Cal.Rptr. 349].)

required. (§ 254.) Thus, Camp Fire's claim that article XIII, section 6 is inapplicable must fail.

By its enactment of section 214.12 the Legislature has plainly attempted to do precisely what article XIII, section 6 is aimed at preventing: the enactment of a retroactive relief statute. The trial court properly declared section 214.12 unconstitutional.

### DISPOSITION

The judgment is affirmed.

Sparks, Acting P. J., and Marler, J., concurred.

A petition for a rehearing was denied May 20, 1988.