[No. C021645. Third Dist. Nov. 22, 1996.]

JOHN N. SCOTT, as County Assessor, etc., Plaintiff and Appellant, v. STATE BOARD OF EQUALIZATION, Defendant and Respondent.

**COUNSEL**

Kevin H. Booty, Jr., County Counsel, and Richard Karlsson, Assistant County Counsel, for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Lawrence K. Keethe and Robert D. Milam, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**RAYE, J.**—The California State Constitution provides that the failure in any year to claim an exemption or classification which reduces a property tax amounts to a waiver as a matter of law for that year. (Cal. Const., art. XIII, § 6.) Another section of the Constitution allows transfers of ownership of real property from parents to children without triggering a reassessment of the value of the property (the parent-child exclusion). (Cal. Const., art. XIII A, § 2, subd. (h).) In 1987, 1988, 1990, 1993 and 1994 the Legislature established and then changed the time period during which the parent-child exclusion must be claimed. The 1993 legislation retroactively extends the time period during which the exclusion from reassessment can be claimed. John N. Scott, the Alameda County Tax Assessor, contends Revenue and Taxation Code[1] section 63.1, subdivision (e)(4) is unconstitutional because it violates the annual waiver provision mandated by article XIII, section 6 of the California Constitution and the prohibition against making a gift of public funds set forth in article XVI, section 6. We conclude the section is constitutional and affirm the judgment.

### BACKGROUND

Article XIII, section 6 of the California Constitution, adopted in 1974, reads: "The failure in any year to claim, in a manner required by the laws in effect at the time the claim is required to be made, an exemption or classification which reduces a property tax shall be deemed a waiver of the exemption or classification for that year."

In 1976 California voters overhauled the property tax system in the state by approving Proposition 13. (Cal. Const., art. XIII A.) Ten years later, the voters fine-tuned Proposition 13 valuation by providing the parent-child exclusion. (Cal. Const., art. XIII A, § 2, subd. (h).)

Enter the state Legislature. In 1987 the Legislature enacted a filing procedure to claim the parent-child exclusion (Stats. 1987, ch. 48, § 1, p. 121 et seq.) which, because it contained no time limitation, was difficult to administer. In 1988 the legislation was amended to allow a claim to be filed within three years of the transfer. (Stats. 1988, ch. 769, § 1, p. 2508 et seq.) In 1990 the Legislature limited the three-year period by requiring a claim to be filed prior to the transfer of the property to a third party. (Stats. 1990, ch. 1494, p. 6977 et seq.) This urgency legislation became effective September 30, 1990. In 1992 the Legislature tried again by eliminating the early cutoff for all transfers made before September 30, 1990. (Stats. 1992, ch. 1180,

---

[1] All future statutory references are to this code.

§ 2.) Finally, in 1993 the Legislature enacted a provision declaring any claim timely if filed within six months of receipt of a supplemental assessment. (§ 63.1, subd. (e)(3).) This provision is applicable to all transfers made after November 6, 1986. (§ 63.1, subd. (e)(4).)

Plaintiff assessor brought this declaratory relief action against the State Board of Equalization seeking a declaration that section 63.1, subdivision (e)(4) is unconstitutional. The assessor appeals the judgment entered in favor of the board finding the legislation constitutional. We independently review the constitutionality of section 63.1, subdivision (e)(4).

## DISCUSSION

### I

■ "Our sole task in deciding the issue before us is to determine the meaning of the governing constitutional provision. In approaching this task, we start with established principles of construction, applicable to statutes and constitutional provisions alike. [Citations.] '[I]n arriving at the meaning of a [constitutional provision], consideration must be given to the words employed, giving to every word, clause and sentence their ordinary meaning. If doubts and ambiguities remain then, and only then, are we warranted in seeking elsewhere for aid. . . . Among these aids is a consideration of the object to be accomplished.' [Citation.] When, however, 'the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voter (in the case of a provision adopted by the voters). [Citations.]' [Citation.]" (*Mutual Life Ins. Co.* v. *City of Los Angeles* (1990) 50 Cal.3d 402, 407 [267 Cal.Rptr. 589, 787 P.2d 996].)

■ The assessor argues that the parent-child exclusion is a "classification" which "reduces a property tax" and therefore under the express mandate of article XIII, section 6 the exclusion was waived since it was not claimed "in a manner required by the laws in effect at the time the claim was required to be made." Relying on *Copren* v. *State Bd. of Equalization* (1988) 200 Cal.App.3d 828 [246 Cal.Rptr. 361], the assessor insists the Legislature has done precisely what the Constitution prohibits; it has enacted a retroactive property tax relief statute forcing local governments to refund property taxes for past years. The trial court disagreed.

The court ruled that article XIII, section 6 "seems to cover traditional kinds of exemptions in which the taxpayer must meet annual filing requirements in order to maintain the exemption from year to year. It speaks of the

failure to claim the exemption 'in any year' and provides that the consequence is a waiver of the 'exemption . . . for that year.' This language makes sense in cases where tax exempt status may indeed change from year to year, such as property used for religious, hospital, or charitable purposes. It does not make sense for the parent-child exclusion, which arises from a one-time event. The statute at issue in *Copren* v. *State Board of Equalization, supra,* invalidating special legislation that exempted a narrow range of taxpayers from annual claims requirements for the welfare exemption, is a classic example of legislation which falls squarely within the language and purpose of Article XIII, section 6. *Copren* is a clear case and is not precedent for this dispute." The court correctly applied the law.

The assessor raises plausible interpretations of various clauses contained in article XIII, section 6. "Classification," as argued by the assessor, may be broad enough to include an exclusion and failure to file a claim within three years may be a failure to make a claim "in a manner required by the laws in effect at the time the claim was required to be made." The assessor does not, however, give consideration to every word and clause and attribute to them their ordinary meanings. The trial court emphasized that which the assessor ignores: the double reference to the filing of annual claims. The section refers to the failure "in any year to claim" and explains the consequence of the failure to file is the "waiver of the exemption or classification for that year." (Art. XIII, § 6.) The section simply does not apply to the one-time filing of an exclusion from reassessment of value. The concept of a reassessment, triggered by a change of ownership, was simply unheard of in the pre-Proposition 13 world in which article XIII, section 6 was enacted. Hence, the waiver provision, according to its express terms, applies to exemptions or classifications filed annually.

The assessor warns that if we conclude the limitations periods established to facilitate the filing of a parent-child exclusion are outside the scope of article XIII, section 6, the Legislature can easily avoid section 6 by requiring taxpayers to file a single claim for future exemptions, exclusions, etc. The assessor ignores a fundamental difference between a post-Proposition 13 exclusion from reassessment of value and a typical exemption. The Attorney General points out that most exemptions are dependent on the use of the property. Annual claims are required because the exemption may be lost if the use changes. The parent-child exclusion, however, applies as long as the child owns the real property because it depends on a conveyance from parent to child and not upon the use of the property.

Hence, we are unwilling to ascribe to the Legislature a sinister motive to evade the Constitution and provide selective retroactive tax relief by ignoring the section's language referring to the filing of annual claims. This

language is dispositive. By referring not once, but twice, to annual filings, we conclude the section does not apply to the later enacted parent-child exclusion which is claimed but once.

*Copren* does not dictate a different result. In *Copren*, Camp Fire, Inc., a nonprofit youth services agency, sought a refund of property taxes it had paid on one of its campgrounds. Although it had failed to record a claim for an exemption as required by law (§ 261, subd. (a)), the Legislature had passed a tax relief statute enabling a delinquent claim of exemption (former § 214.12). We concluded: "In enacting section 214.12, the Legislature attempted retrospectively to confer a property tax exemption on claimants who did *not* claim it 'in a manner required by the laws in effect at the time the claim was required to be made.' [Citation.] Thus, the Legislature has attempted to confer by statute that which by the Constitution is waived." (200 Cal.App.3d at p. 834.)

At issue in *Copren* was the availability of the "welfare exemption." "Section 214 provides that property used exclusively for religious, hospital, or charitable purposes, which is owned and operated by community chests, funds, foundations, or corporations organized and operated for religious, hospital, scientific or charitable purposes is exempt from property taxation if certain requirements are met. (§ 214, subd. (a).)" (200 Cal.App.3d at p. 832.) Claims for the welfare exemption must be filed annually.

Consequently, the trial court correctly concluded that *Copren* is "a classic example of legislation which falls squarely within the language and purpose of Article XIII, Section 6." The legislation granted retrospective tax relief by allowing an exemption which had been waived as a matter of constitutional law. We agree that application of the language of article XIII, section 6 clearly invalidated the legislation in *Copren*. By failing to record its annual claim for exemption, Camp Fire, Inc., had failed to claim its exemption " 'in a manner required by the laws in effect at the time the claim was required to have been made.' " (200 Cal.App.3d at p. 834.) The Legislature's subsequent benevolence was unconstitutional because it attempted to confer an exemption the Constitution proscribed. The fundamental concept of the later enacted exclusion from reassessment simply does not fit within the language of section 6. Unlike the welfare exemption at issue in *Copren*, a claim for the exclusion need not be filed every year. The language of section 6 prevents the Legislature from granting selective retroactive tax relief to those who had failed to comply with the law in any year and thereby to compel local governments to refund taxes for years in which exemptions had been waived as a matter of law. We are not at liberty to judicially enlarge the scope of article XIII, section 6 to include the filing of a one-time exclusion from

reassessment expressly provided by an entirely different section of the Constitution.

## II

 The assessor next asserts section 63.1, subdivision (e)(4) is invalid because it violates the constitutional prohibition against making a gift of public funds. (Cal. Const., art. XVI, § 6.) As a general rule, the Legislature cannot provide relief for taxes which have become fixed and vested. (*County of Sonoma* v. *State Bd. of Equalization* (1987) 195 Cal.App.3d 982, 992-993 [241 Cal.Rptr. 215].) "To this general rule, however, there is a well recognized exception. It has been consistently held that expenditures of public funds or property which involve a benefit to private persons are not gifts within the meaning of the constitutional prohibition if those funds are expended for a public purpose." (*Schettler* v. *County of Santa Clara* (1977) 74 Cal.App.3d 990, 1003 [141 Cal.Rptr. 731].)

 The assessor acknowledges the public purpose exception but argues a public purpose cannot be presumed in the absence of a legislative statement of purpose and without evidence to support the presumption. He contends a limited class of persons benefited from section 63.1, subdivision (e)(4) and the evidence suggests there is no valid public purpose. The Attorney General concedes the Legislature did not expressly identify the public purpose.

The assessor relies heavily on *California Computer Products, Inc.* v. *County of Orange* (1980) 107 Cal.App.3d 731 [166 Cal.Rptr. 68], to support his argument that the Legislature's failure to enunciate a public purpose renders the legislation unconstitutional. *California Computer* is easily distinguished. The constitutional prohibition against making a gift of public funds was not at issue. Rather the issue was whether a business inventories exemption applied to the taxpayer's tax years under a later amended statute. In that context, the court considered the legislative intent behind the amendment. The court utilized the Legislature's failure to state a public purpose to bolster its conclusion the Legislature did not intend to make the amendment retroactive. The language cited by the assessor is dicta on a tangential issue. It is certainly not authority for invalidating section 63.1, subdivision (e)(4).

The failure to explicitly state a public purpose is not decisive. The courts may infer the public purpose from other legislation or the manner in which the legislation is enacted. Thus, in *Atlantic Richfield Co.* v. *County of Los Angeles* (1982) 129 Cal.App.3d 287 [180 Cal.Rptr. 901], the court wrote: "While not stated in the enactment, . . . the Legislature could well have

reasoned that the long run energy production in California would benefit from the immediate application of sections 107.2 and 107.3 to the 1967-1968 tax year because such an application would promote maximum recovery of oil and gas resources, including production from marginal wells." (*Id.* at p. 297.) The court referenced other statutes embodying the same public policy. (*Id.* at p. 297, fn. 5.) Most significantly, the court expressly rejected the argument raised by the assessor that the legislative failure to set forth a clear and specific public purpose was fatal because it left such purpose up to speculation and conjecture. (*Id.* at p. 298.) Similarly, in *Community Television of So. Cal.* v. *County of Los Angeles* (1975) 44 Cal.App.3d 990 [119 Cal.Rptr. 276], the court applied the public purpose exception by emphasizing the legislation was enacted as an "urgency" measure. The statute was necessary to serve a vital public purpose. (*Id.* at p. 998.)

In 1986 the voters of California spoke clearly. By initiative, they enacted a constitutional provision allowing parents to convey real property to their children without triggering reassessment and thereby increasing the property taxes. (Cal. Const., art. XIII A, § 2, former subd. (h) [now subd. (h)(1)].) In short, the voters excluded a parent-child conveyance from the definition of change of ownership. They did not, however, require taxpayers to file a claim to obtain the exclusion.

Though not expressly stated, the legislative purpose underlying section 63.1, subdivision (e)(4) is clear from the legislative history. The Legislature sought to implement the will of the voters through a series of legislative measures imposing claims filing requirements. By 1993 the Legislature recognized flaws in earlier claims procedures which cut off the rights of taxpayers who, because they were unaware of the need to file a claim, inadvertently lost their parent-child exclusion. The statute here under attack was intended to rectify those flaws.

"A relief of hardship to a taxpayer is a valid public purpose, and the determination of the Legislature in this regard has the requisite reasonable basis which is within its prerogative and to which we have no quarrel." (*Atlantic Richfield Co.* v. *County of Los Angeles*, *supra*, 129 Cal.App.3d at p. 300.) While the Legislature did not expressly articulate the public purpose to be served by enlarging the time period for filing claims, it requires neither speculation nor conjecture to understand the motive was to give unwary taxpayers the benefit of the constitutional provision excluding a parent-child conveyance from reassessment. "[U]nder an unbroken line of cases the determination of what constitutes a public purpose is primarily a matter for the Legislature, and its discretion will not be disturbed by the courts so long as that determination has a reasonable basis." (*Schettler* v. *County of Santa*

*Clara, supra,* 74 Cal.App.3d at p. 1004; *Community Television of So. Cal.* v. *County of Los Angeles, supra,* 44 Cal.App.3d at p. 997.) We have no quarrel with the validity of the public purpose, and therefore conclude the legislation does not amount to an unconstitutional gift of public funds.

The judgment is affirmed.

Puglia, P. J., and Davis, J., concurred.