Filed 1/29/24  Wickam v. County of Orange CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| MARY M. WICKAM, as Second Successor Trustee, etc.,<br><br>     Plaintiff and Appellant,<br><br>          v.<br><br>COUNTY OF ORANGE,<br><br>     Defendant and Respondent. | G062053<br><br>(Super. Ct. No. 30-2020-01145060)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Glenn R. Salter, Judge.  Reversed and remanded with directions.

Lowthorp Richards and Kevin M. McCormick for Plaintiff and Appellant.

Leon J. Page, County Counsel, Laura D. Knapp and D. Kevin Dunn, Deputies County Counsel, for Defendant and Respondent.

\*          \*          \*

This tax refund action concerns escape assessments levied on three commercial properties (collectively, the property) formerly held in a family trust for

which plaintiff Mary M. Wickam is second successor trustee.[1]  Plaintiff appeals from a trial court judgment entered in favor of defendant County of Orange (County).  The judgment affirmed a decision of the Orange County Assessment Appeals Board (Appeals Board) which concluded, based on mailed notices of the escape assessments, that the first successor trustee belatedly filed claims with the County asserting the property should have been excluded from reassessment under the parent-child exclusion (Cal. Const., art. XIII A, § 2(h)(1); Rev. & Tax. Code, § 63.1, subd. (a)(1) & (2)[2]).

Plaintiff contends the trial court abused its discretion in affirming the Appeals Board's decision.  From her perspective, the exclusion claims should have been deemed timely because the notices relied on by the County were not sent to the correct address, but instead were sent to the address of an escrow company which appeared on a grant deed related to the sale of the property to a third party.  Based on a thorough review of the administrative record, we conclude the Appeals Board's decision was erroneous.  Although the Appeals Board cited the correct legal standard in its written decision, it ultimately applied a different standard in reaching its conclusion.  Applying the correct law, there is insufficient evidence to support a conclusion that the parent-child exclusion claims were untimely.  Accordingly, we reverse the judgment.

## FACTS

In 2011, following the death of their mother, plaintiff and two of her siblings acquired a beneficial interest in the property pursuant to the terms of various family trusts.  No one notified the County of any claimed tax exclusion.  In the ensuing

---

[1]      The original plaintiff and appellant in this case was Johnny C. Gedney, in his capacity as first successor trustee of the family trust.  While this appeal was pending, Gedney passed away.  We granted a motion by his sister, Wickam, in her capacity as second successor trustee of the family trust, to be formally substituted in as the plaintiff and appellant.

[2]      All further statutory references are to the Revenue and Taxation Code unless otherwise specified.

years, real property tax documents for the property were sent by the County to plaintiff's address in the City of Corona.

Prior to selling the property to a third party, a March 2017 grant deed transferred it from the two family trusts holding title to another family trust—the Gedney Family 1978 Trust. The document identifies Gedney as a successor trustee of all three trusts involved in the property transfer.

In the top left corner of the recorded grant deed, under a heading stating "AND WHEN RECORDED MAIL TO", the following is handwritten: "Johnny C. Gedney, c/o Intervalley Escrow, 140 S. Lake Ave. #265, Pasadena, CA 91101." At the bottom of the same page, the deed states, "MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS SHOWN ABOVE." No name is written directly below that statement. The following page has two signature lines with Gedney's signature, identifying he signed in his capacity as successor trustee of the transferor trusts.

A similar grant deed, dated July 2017 and recorded the same day as the other grant deed, transferred ownership of the property to a third party. Gedney signed the document in his capacity as successor trustee of the transferor trust, and the top left corner lists an address for the buyer.

In April 2018, the County sent notices of proposed escape assessments concerning the property to the escrow company address listed on the March 2017 grant deed. Less than two weeks later, in May 2018, it sent escape assessment bills for tax years 2014 through 2017 to the same address. At the time, plaintiff and her siblings were not aware of these notices or bills.

Over six months later, at the end of October 2018, Gedney learned of the outstanding escape assessments for the first time when the Orange County Tax Collector's Office called him. He confirmed his mailing address so the relevant papers could be mailed to him. On November 5, 2018, Gedney received a property tax bill

3

concerning one of the properties; he later obtained copies of tax bills for the other two properties. On November 15, 2018, he filed claims with the County asserting the property should have been excluded from reassessment based on the parent-child exclusion. [3]

The Orange County Assessor's Office (Assessor's Office) denied the exclusion claims, so Gedney appealed to the Appeals Board. The Appeals Board held an administrative hearing. The parties stipulated to a variety of the underlying facts; each side also presented evidence and argued their position.

County representatives explained the escape assessment notices were sent to the escrow company's address because that was the last known address for Gedney based on the March 2017 deed. A preliminary change of ownership document filed with the County by Gedney around the same time, did not include any mailing address, phone number, e-mail address or other contact information for Gedney. From the County's position, pursuant to section 63.1, Gedney had six-months from the time the County initially provided notice of the escape assessments in April and May 2018 to claim the parent-child exclusion. His claims were not filed until November 15, 2018, a couple weeks after that deadline passed.

Gedney, in his capacity as first successor trustee, contended the papers sent to the escrow company address should not be considered in determining the timeliness of the parent-child exclusion claims. From his perspective, the escape assessment notices should have been sent to the same address used by the County for all the prior property

---

[3] In 2020, California voters passed Proposition 19 which amended the California Constitution concerning the parent-child exclusion (Voter Information Guide, Gen. Elec. (Nov. 3, 2020) text of Prop. 19, § 2, pp. 11-14.) That amendment, and the statutory amendment later made by the Legislature to implement the constitutional amendment (Stats. 2021, ch. 427, § 2), are not relevant to this case because they only apply to purchases or transfers made on or after February 16, 2021 (see Cal. Const., art. XII A, § 2.1; § 63.2). Accordingly, we discuss the law as it existed prior to those constitutional and statutory amendments.

4

related tax documents—plaintiff's Corona address. Gedney testified he did not write or provide the address information found at the top of the March 2017 grant deed. When questioned by one of the Appeals Board members about whether the address information was at the top of the deed when he signed it, Gedney responded, "I'm sure it was." He then clarified: "We were selling the property and all documents were going to the escrow company. And I really wasn't concerned they would send the documents to me. I would think they would send it to the escrow company."

The Appeals Board ultimately upheld the Assessor's Office rejection of the parent-child exclusion claims. In a written decision, it concluded the notices sent to the escrow company were proper and, thus, the claims were untimely.

Having paid the escape assessments, plaintiff filed a lawsuit against the County seeking a refund. The trial court held a bench trial, properly limiting its consideration to the administrative record and argument of the parties. It concluded the County's mailing of the assessment notices to the escrow company's address complied with the statutory duties of the Assessor's Office. The court entered judgment accordingly.

Plaintiff timely appealed.

## DISCUSSION

Plaintiff contends the trial court applied the wrong standard of review concerning the legal adequacy of the escape assessment notices and abused its discretion in validating the Appeals Board's decision.[4] We asked the parties to brief the additional

---

[4] Plaintiff's opening brief mentions due process, stating the County's failure to provide proper notice of the assessments violated procedural due process rights. Because plaintiff does not provide any analysis or citation to authority on the issue, we do not reach it. (*In re Marriage of Schroeder* (1987) 192 Cal.App.3d 1154, 1164.) In addition, for the first time in a reply brief, plaintiff argues the County's assessment notices constitute an unconstitutional taking under the Fifth Amendment of the United States Constitution. We decline to consider these late raised contentions. (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1295.)

issues of whether the Appeals Board used the correct legal standard in evaluating the notice issue before it and whether substantial evidence in the administrative record supports a certain factual finding that is indispensable to the ultimate legal determination. Based on resolution of the latter two issues, we conclude the Appeals Board's decision was erroneous.

I.      *Standard of Review*

Beginning with the standard of review, plaintiff cites cases discussing appellate review under Code of Civil Procedure section 1094.5. That statute concerns writs of administrative mandate and does not apply here. Plaintiff rightly did not seek mandamus relief. Such equitable relief is not available when challenging a local assessment appeals board decision because a tax refund action, which plaintiff filed, "provides property owners with an adequate remedy at law." (*William Jefferson & Co., Inc. v. Orange County Assessment Appeals Bd. No. 2* (2014) 228 Cal.App.4th 1, 11; see *Schoenberg v. County of Los Angeles Assessment Appeals Bd.* (2009) 179 Cal.App.4th 1347, 1355 [mandate not available for review of appeals board's assessment decision on the merits].) "Indeed, '[t]he exclusive means of review of tax proceedings in California has been the remedy of suit to recover alleged overpayments'" once the tax has been paid. (*William Jefferson & Co., Inc., supra*, at p. 11.)

Review of the merits of a county assessment appeals board's determination in a tax refund action is somewhat unique because "[a] county assessment appeals board "'is a constitutional agency exercising quasi-judicial powers delegated to the agency by the Constitution" [citation] . . . .' [Citation.] 'In light of the semijudicial status of local boards, "[the Board's] factual determinations are entitled on appeal to the same deference due a judicial decision, i.e., review under the substantial evidence standard." [Citation.]' [Citation.] When the assessment appeals board decides a question of law, such as the interpretation of a statute, courts are authorized to conduct an independent reassessment."

(*Manson Construction Co. v. County of Contra Costa* (2020) 56 Cal.App.5th 1079, 1087 (*Manson*); accord *Fisher v. County of Orange* (2022) 82 Cal.App.5th 39, 51-52.)

II.    *Escape Assessment Notice Requirements*

Turning to the substantive issue before us, "[i]n 1976 California voters overhauled the property tax system in the state by approving Proposition 13." (*Scott v. State Bd. of Equalization* (1996) 50 Cal.App.4th 1597, 1600 (*Scott*), citing Cal. Const., art. XIII A; see *Bohnett v. County of Santa Barbara* (2021) 59 Cal.App.5th 1128, 1131.) The changes limit "the assessed value of real property for ad valorem tax purposes to that shown on the 1975-1976 tax bill or to its 'appraised value . . . when purchased, newly constructed, or a change in ownership has occurred after the 1975 assessment.'" (*Empire Properties v. County of Los Angeles* (1996) 44 Cal.App.4th 781, 785.) Unless an exclusion applies, a "change in ownership" triggers a reassessment of the property's value which may considerably increase the property taxes owed. (See *Olive Lane Industrial Park, LLC v. County of San Diego* (2014) 227 Cal.App.4th 1480, 1487.)

Ten years later, through Proposition 58, the voters adjusted their prior property valuation measures by providing for the parent-child exclusion. (*Scott, supra*, 50 Cal.App.4th at p. 1600.) The exclusion specifies two types of transactions are not to be considered a change in ownership for property tax purposes: (1) "the purchase or transfer of the principal residence of the transferor in the case of a purchase or transfer between parents and their children"; and (2) "the purchase or transfer of the first one million dollars ($1,000,000) of the full cash value of all other real property between parents and their children." (Cal. Const., art. XIII A, § 2(h)(1).) These provisions were codified by the Legislature in section 63.1. (§ 63.1, subd. (a)(1) & (2).)

Over the course of roughly six years, the Legislature adopted and fine-tuned a filing procedure for claiming the parent-child exclusion. (*Scott, supra*, 50 Cal.App.4th at pp. 1600-1601.) As the law existed at all times relevant to the issue in this case, a claim must be filed within three years after the purchase or transfer for which the

7

claim is filed, or prior to transfer of the property to a third party, whichever is earlier. (§ 63.1, subd. (e)(1)(B).) Notwithstanding this general deadline, if "a notice of supplemental or escape assessment" is mailed to the assessee because of a purchase or transfer, a claim is timely if filed "within six months after the date of mailing of [the] notice." (*Id*. at subd. (e)(1)(C).)

The sole substantive issue, as presented by plaintiff, is whether the notices sent by the County to the escrow company address were legally sufficient under the relevant statutes to trigger the six-month claim filing deadline. If they were, it is undisputed plaintiff's parent-child exclusion claims were untimely. If they were not, it is undisputed the claims were timely and plaintiff is entitled to a refund.

Notice requirements concerning escape assessments appear in two statutes. Section 531.8 speaks to notice of a proposed escape assessment which must be "mailed or otherwise delivered to the affected taxpayer" at least 10 days before the escape assessment is placed on the tax roll. Section 534, subdivision (b) (section 534(b)), concerns notice of an actual escape assessment. It provides, in relevant part: "No assessment [made pursuant to Article 3 (commencing with section 501) or this article] shall be effective for any purpose . . . until the assessee has been notified thereof personally or by United States mail at his or her address as contained in the official records of the county assessor." (§ 534(b).) It also makes clear such required notice is separate and distinct from that provided for in section 531.8. (§ 534, subd. (d)(2).)

Because the exclusion claim filing deadline in section 63.1, subdivision (e)(1)(C), is triggered by "a notice of supplemental or escape assessment," not one concerning a proposed escape assessment, section 534(b) governs in this case. Thus, the focus is whether the County mailed the notices of escape assessments to Gedney at his "address as contained in the official records of the county assessor." (§ 534(b); see *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 [unambiguous plain language of statute governs].)

8

Although the Appeals Board quoted section 534(b) in its written determination, it appears from the record it ultimately applied a different legal standard. Specifically, it concluded the County "satisfied the applicable statutes" because the "[a]ssessor mailed the Notice of Escape Assessment to the last address known to [a]ssessor, which was the address on file in [a]ssessor's records."

The Appeals Board derived the "last address known to [a]ssessor" language from section 619, subdivision (d), a provision also quoted in its written decision.[5] But, by its plain language, that statute does not apply here because it concerns an assessor's obligation to annually inform an assessee of the assessed value of his or her real and personal property. (§ 619, subd. (a).) In other words, it applies to assessed value, generally, not to escape assessments, particularly. It is well-established that "[a] specific provision relating to a particular subject will govern a general provision, even though the general provision standing alone would be broad enough to include the subject to which the specific provision relates." (*People v. Tanner* (1979) 24 Cal.3d 514, 521; accord *San Francisco Taxpayers Assn. v. Board of Supervisors* (1992) 2 Cal.4th 571, 577.)

Even if we assume, arguendo, the Appeals Board employed the correct legal standard based on its reference to "the address on file in [a]ssessor's records," we must consider whether its factual findings regarding notice are supported by substantial

---

5        Section 619 provides, in relevant part: "(a) Except as provided in subdivision (f), the assessor shall, upon or prior to completion of the local roll, do either of the following: [¶] (1) Inform each assessee of real property on the local secured roll whose property's full value has increased over its full value for the prior year of the assessed value of that property as it shall appear on the completed local roll. [¶] (2) Inform each assessee of real property on the local secured roll, or each assessee on the local secured roll and each assessee on the unsecured roll, of the assessed value of his or her real property or of both his or her real and his or her personal property as it shall appear on the completed local roll [¶] . . . [¶] (d) The information shall be furnished by the assessor to the assessee by regular United States mail directed to him or her at his or her latest address known to the assessor. The assessor may choose to accept a written request from the assessee to provide the information by electronic mail in lieu of by regular United States mail."

9

evidence. (*Manson, supra*, 56 Cal.App.5th at p. 1087.) Because the parties' initial briefing did not address any factual issues, we asked the parties to brief whether substantial evidence in the administrative record supports a finding that the escrow company address was the address for the assessee contained in the official records of the County Assessor. (§ 534(b).)

A thorough review of the record reveals a complete lack of evidence on this issue. A deputy assessor testified the escrow company address to which the May 2018 escape assessment bills were sent came from the March 2017 grant deed. When an Appeals Board member specifically asked whether it was "the address that's contained in the official records of the County Assessor at the time," the deputy assessor responded, "I can't answer your question." He continued, "I just think that this was the last mailing address that [the Assessor's Office] had . . . ." And in response to a follow up question whether it was a "default address," the deputy assessor answered affirmatively.

That the escrow company address was the last address or the default address alone is insufficient to support a finding it was the address for the assessee in the Assessor's Office official records. This is particularly so given the deputy assessor's inability to answer the direct official records question.

The County argues any error in notice does not impact the validity of the escape assessments. It relies on section 619, subdivision (e), which provides: "Neither the failure of the assessee to receive the information nor the failure of the assessor to so inform the assessee shall in any way affect the validity of any assessment or the validity of any taxes levied pursuant thereto." But once again, section 619 does not apply here because it does not concern escape assessments. The statute that does apply is section 534, and it states the opposite: "No assessment described in subdivision (a) shall be effective for any purpose . . . until the assessee has been notified" in the manner detailed above. (§ 534(b).) Moreover, the validity of the escape assessments is not at issue in this case. Rather, the dispute is whether the parent-child exclusion claims were timely such

10

that the County should have considered them on the merits. And the answer to that question hinges on whether the County's May 2018 mailings were adequate to trigger the six-month claim filing deadline.

Because the County bore the burden of proving by a preponderance of the evidence that the County provided proper notice to trigger the six-month exclusion claim filing deadline (§ 167, subd. (a); Cal. Code Regs., tit. 18, § 321, subd. (d)), and because a factual finding critical to make that determination under the correct legal standard is not supported by the evidence, the Appeals Board's decision was erroneous. Plaintiff's November 15, 2018 parent-child exclusion claims should have been deemed timely.

## DISPOSITION

The judgment is reversed. On remand, the trial court is directed to vacate the judgment against plaintiff and enter a new judgment in plaintiff's favor. Plaintiff is entitled to costs on appeal.



DELANEY, J.

WE CONCUR:


GOETHALS, ACTING P. J.


GOODING, J.

11