Filed 7/31/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>    Respondent;<br><br>A.M.M.,<br><br>    Real Party in Interest. | A169314<br><br>(Contra Costa County<br>Super. Ct. No. C22-02774) |

In 2019 the Legislature enacted Assembly Bill No. 218 (2019–2020 Reg. Sess.) (Stats. 2019, ch. 861, § 1) (AB 218), which provided a three-year window within which plaintiffs were permitted to bring childhood sexual assault claims against public entities that would otherwise be barred because of statutes of limitations or claim presentation requirements.  Plaintiff and real party in interest A.M.M. (Plaintiff) subsequently relied on the enactment to file a complaint against defendant and petitioner West Contra Costa Unified School District (District) alleging she was the victim of sexual assaults by a District employee that began when she was 14 years old in 1979 and lasted until 1983.

The District demurred, arguing that reviving a claim that was formerly barred for failure to satisfy the claim presentation requirement would

1

constitute an unconstitutional gift of public funds, in violation of article XVI, section 6 of the California Constitution (the "gift clause"). The trial court overruled the demurrer, the District sought writ review, and this court issued an order to show cause. Before this court, the District also contends AB 218 violates its right to due process under both the federal and California Constitutions. We reject the District's contentions.

BACKGROUND

Plaintiff alleges she was repeatedly sexually assaulted by her counselor at Richmond High School, within the District, between 1979 and 1983. Plaintiff further alleges that District employees were aware of the counselor's conduct. In December 2022, Plaintiff filed her initial complaint, and in June 2023 she filed a second amended complaint asserting eight causes of action: (1) child sexual abuse; (2) sexual battery; (3) intentional infliction of emotional distress; (4) negligence; (5) negligence per se; (6) negligent hiring, retention, and supervision of an unfit employee; (7) negligent supervision of a minor; and (8) negligent failure to warn, train, or educate. The complaint states the action was brought pursuant to AB 218 and that the action is not barred due to any failure to present a claim to the District.

In August 2023, the District filed a demurrer on the ground that the gift clause prohibited the Legislature from retroactively reviving Plaintiff's claims, as well as on other grounds. In October, the trial court sustained the demurrer to the first three causes of action with leave to amend, but overruled the demurrer to the extent it was based on the gift clause.[1]

In December 2023, the District filed a petition in this court seeking issuance of a writ of mandate directing respondent Superior Court of Contra

---

[1] The trial court's order sustaining the demurrer as to the first three causes of action is not at issue in the present proceeding.

2

Costa County to sustain the demurrer in its entirety. In February 2024, this court issued an order to show cause, Plaintiff filed a return, and the District filed a reply.[2] This court also permitted Plaintiff to file a letter brief in response to a new state due process argument asserted by the District in its reply. Finally, this court granted requests by various entities to file 12 amicus curiae briefs, and Plaintiff and the District filed responses to the briefs.[3]

---

[2] This court granted the parties' requests for judicial notice of the legislative history of AB 218 and of superior court orders addressing AB 218 in other matters.

[3] Amicus curiae briefs in support of Plaintiff were filed by (1) Consumer Attorneys of California and (2) Public Justice, Child USA, Equal Rights Advocates, and National Center for Victims of Crime. Amicus curiae briefs in support of the District were filed by (1) Schools Association for Excess Risk, Northern California Regional Liability Excess Fund, Southern California Regional Liability Excess Fund, and Statewide Association of Community Colleges; (2) California School Boards Association and its Education Legal Alliance; (3) Montecito Union School District and Carpinteria Unified School District; (4) Schools Excess Liability Fund, California Association of Joint Powers Authorities, and Public Risk Innovations, Solutions, and Management; (5) Alliance of Schools for Cooperative Insurance Programs; (6) California Association of School Business Officials; (7) Schools Insurance Authority; (8) County of Los Angeles; (9) Compton Unified School District; and (10) East Side Union High School District, San Mateo Union High School District, Santa Clara Unified School District, Oakland Unified School District, Los Gatos-Saratoga Union High School District, Oak Grove School District, and Berryessa Union School District.

DISCUSSION

I.    *Legal Background*

A.    *The Claim Presentation Requirement*

Actions against a public entity "for recovery of damages suffered as a result of childhood sexual assault" (Code Civ. Proc., §§ 340.1, 340.11)[4] are subject to the Government Claims Act (Gov. Code, § 905 et seq.) (GCA).  The California Supreme Court has "described 'the intent that illuminates section 340.1 as a whole' as an aim 'to expand the ability of victims of childhood sexual abuse to hold to account individuals and entities responsible for their injuries.' " (*Los Angeles Unified Sch. Dist. v. Superior Ct.* (2023) 14 Cal.5th 758, 777 (*Los Angeles Unified*).)  The Court explained, "Since its original enactment in 1986 [citation], the statute has been amended on multiple occasions to extend the filing periods for claims alleging childhood sexual assault and revive otherwise time-barred claims. [¶] One such amendment occurred through the enactment of [AB 218] in 2019.  [Citation.]  This revision made several changes to []section 340.1.  Among these adjustments, [AB 218] extended the time for filing claims for childhood sexual assault ([]§ 340.1, subds. (a), (c)) and created a revival window for lapsed claims (*id.*, subd. (q)), which included relief from the claim presentation deadlines within the [GCA]." (*Ibid.*)

---

[4] All undesignated statutory references are to the Code of Civil Procedure.  Effective January 1, 2024, the Legislature enacted section 340.11, which now governs claims for childhood sexual assault that occurred before January 1, 2024.  (Stats. 2023, ch. 877 (S.B. 558), § 1, eff. Jan. 1, 2024.)  The revival provision at issue in the present case is currently located in section 340.11, subdivision (q).  The current version of section 340.1 applies to any claim in which the childhood sexual assault occurred on or after January 1, 2024.  (§ 340.1, subd. (p).)  Nevertheless, the discussion of section 340.1 in the caselaw is also relevant to section 340.11.

4

In particular, AB 218, which took effect January 1, 2020, revived claims for childhood sexual abuse, regardless of when the sexual abuse allegedly took place, for a three-year period that expired December 31, 2022. (Former § 340.1, subd. (q).) The statute expressly revived claims "that would otherwise be barred as of January 1, 2020, because the applicable statute of limitations, *claim presentation deadline*, or any other time limit had expired." (*Ibid.*, emphasis added; see also *Coats v. New Haven Unified Sch. Dist.* (2020) 46 Cal.App.5th 415, 424 (*Coats*).) Prior to the enactment of AB 218, former Government Code section 905, subdivision (m), exempted from the claim presentation requirement "[c]laims made pursuant to Section 340.1 . . . for the recovery of damages suffered as a result of childhood sexual abuse" with one significant limitation: "[t]his subdivision shall apply only to claims arising out of conduct occurring on or after January 1, 2009." AB 218 removed that limitation, so Government Code section 905, subdivision (m) exempts all claims based on childhood sexual assault from the claim presentation requirement. (See *Coats*, at p. 424.)

The District challenges this retroactive, statutory waiver of the claim presentation requirement. "For many decades before" the 1963 enactment of the GCA, "tort liability for public entity defendants was barred by a common law rule of governmental immunity." (*Quigley v. Garden Valley Fire Prot. Dist.* (2019) 7 Cal.5th 798, 803 (*Quigley*).) The GCA "sets forth the general rule of immunity for public entities," " 'abolish[ing] all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution,' " or " 'if a statute . . . is found declaring them to be liable.' " (*County of Santa Clara v. Superior Court* (2023) 14 Cal.5th 1034, 1045.) Thus, the GCA "is a

5

comprehensive statutory scheme governing the liabilities and immunities of public entities and public employees for torts." (*Quigley*, at p. 803.)

Pursuant to the claim presentation requirement, "[b]efore suing a public entity, the plaintiff must present a timely written claim for damages to the entity." (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 208 (*Shirk*).) During the 1979–1983 timeframe at issue in the present case, "a claim relating to a cause of action for 'injury to person' had to be presented to a government entity 'not later than the 100th day *after the accrual of the cause of action.*' " (*Ibid.*, emphasis added.) "Accrual of the cause of action for purposes of the government claims statute is the date of accrual that would pertain under the statute of limitations applicable to a dispute between private litigants." (*Id.* at pp. 208–209; accord, *Willis v. City of Carlsbad* (2020) 48 Cal.App.5th 1104, 1118.)

The California Supreme Court has explained the purposes of the claim presentation requirement as follows: " 'Requiring a person allegedly harmed by a public entity to first present a claim to the entity, before seeking redress in court, affords the entity an opportunity to promptly remedy the condition giving rise to the injury, thus minimizing the risk of similar harm to others. [Citations.] The requisite timely claim presentation before commencing a lawsuit also permits the public entity to investigate while tangible evidence is still available, memories are fresh, and witnesses can be located. [Citations.] Fresh notice of a claim permits early assessment by the public entity, allows its governing board to settle meritorious disputes without incurring the added cost of litigation, and gives it time to engage in appropriate budgetary planning. [Citations.] The notice requirement under the government claims statute thus is based on a recognition of the special status of public entities, according them greater protections than nonpublic

6

entity defendants, because unlike nonpublic defendants, public entities whose acts or omissions are alleged to have caused harm will incur costs that must ultimately be borne by the taxpayers.' " (*Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 907–908 (*Rubenstein*).)

B.    *The Prohibition on Gifts of Public Funds*

The District contends that AB 218's retroactive waiver of the claim presentation requirement constitutes an unconstitutional gift of public funds. The gift clause declares, in relevant part, that "The Legislature shall have no power . . . to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever . . . ." (Cal. Const., art. XVI, § 6.)[5]  The gift clause denies "to the legislature the right to make direct appropriations to individuals from general considerations of charity or gratitude, or because of some supposed moral obligation resting upon the people of the state . . . .  It was because of abuses which had crept into legislation by reason of the unlimited power theretofore exercised by the legislature in determining what individual claims should be recognized by private statute, and to relieve in some degree legislators from the importunities of persons interested in securing such appropriations, that the power of the legislature was thus limited by the present constitution of this state." (*Stevenson v. Colgan* (1891) 91 Cal. 649, 651.)

The word "gift" as used in the gift clause is not limited to transfers of personal property, " 'but includes all appropriations of public money for which there is no authority or enforceable claim,' " or which are grounded on mere

---

[5] The prohibition on gifts was previously contained in article IV, section 31, of the California Constitution.  (See *Conlin v. Bd. of Sup'rs of City & Cnty. of San Francisco* (1893) 99 Cal. 17, 21 (*Conlin*).)

7

moral or equitable obligations. (*Westly v. U.S. Bancorp* (2003) 114 Cal.App.4th 577, 582; see also *Conlin*, *supra*, 99 Cal. at pp. 21–22.)[6] However, a "gift" of public funds is not unconstitutional if "it is to be used for a public rather than a private purpose. . . . That is because '[t]he benefit to the state from an expenditure for a "public purpose" is in the nature of consideration and the funds expended are therefore not a gift even though private persons are benefited there from.' " (*Westly*, at p. 583; see also *Los Angeles County v. La Fuente* (1942) 20 Cal.2d 870, 876–877 (*La Fuente*) ["If

_____

[6] We observe that other states' high courts have ruled differently, concluding that appropriating public funds to satisfy a moral obligation not previously recognized in law is not improper. (Compare *Veterans' Welfare Bd. v. Riley* (1922) 189 Cal. 159, 170 ["Our own decisions consistently hold that an appropriation of public funds based upon a moral obligation as a consideration is a gift within the meaning of the Constitution."] with, e.g., *Ruotolo v. State* (1994) 83 N.Y.2d 248, 259 ["If the waiver of immunity from liability imposed by the Legislature rests on an adequate moral obligation, then the bypass does not offend the no-gift prohibition."]; *Koike v. Bd. of Water Supply, City & Cnty. of Honolulu* (1960) 44 Haw. 100, 105 ["The essence of a moral obligation is that it arises out of a state of facts appealing to a universal sense of justice and fairness, though, upon such facts no legally enforceable claim can be based."]; *State v. Clausen* (1921) 113 Wash. 570, 573 ["if there is a moral and honorable claim upon the public treasury, although there be no debt which could obtain recognition in a court of law or equity, a basis for the exercise of the taxing power is furnished"]; see also *Mills v. Stewart* (1926) 76 Mont. 429, 247 P. 332, 335 ["We are unable to appreciate the distinction drawn by the California court between a claim of this character founded upon a statute enacted prior to the time the injury occurred and a claim predicated upon a statute enacted after the injury."]; *People v. Standard Acc. Ins. Co.* (1941) 42 Cal.App.2d 409, 413–414 (*Standard*) ["California has been placed with the minority in the application of the constitutional provision as to claims arising out of past transactions and based upon moral obligations."]; 63C AmJur.2d (2024) Public Funds § 58 ["the right of the state to appropriate public funds in discharge of the state's duty, whether the duty is legal or only moral, is recognized in some jurisdictions but not in others"].)

the money is for a public purpose, the appropriation is not a gift even though private persons are benefited by the expenditure."]; *Sturgeon v. County of Los Angeles* (2008) 167 Cal.App.4th 630, 637 ["By its terms, article XVI, section 6 of the state Constitution prevents the Legislature from making or authorizing any gift of public funds for private purposes."].)

"The determination of what constitutes a public purpose is primarily a matter for the Legislature, and its discretion will not be disturbed by the courts so long as that determination has a reasonable basis." (*Cnty. of Alameda v. Carleson* (1971) 5 Cal.3d 730, 746 (*Carleson*).) Where the Legislature makes findings, they are "given great weight and will be upheld unless found to be unreasonable and arbitrary." (*California Hous. Fin. Agency v. Elliott* (1976) 17 Cal.3d 575, 583 (*Elliott*).) But "[t]he failure to explicitly state a public purpose is not decisive. The courts may infer the public purpose from other legislation or the manner in which the legislation is enacted." (*Scott v. State Bd. of Equalization* (1996) 50 Cal.App.4th 1597, 1604 (*Scott*).)

II.     *AB 218's Retroactive Waiver Is Not A Gift of Public Funds*

The District contends AB 218's waiver of the claim presentation requirement is a gift of public funds, insofar as the statute retroactively removes the requirement for claims that accrued before 2009.[7] In this Part, we reject this argument, without regard to the question of public purpose (see Part III, *post*). As we explain, waiver of the claim presentation requirement did not constitute an expenditure of public funds that may be considered a "gift" because AB 218 did not create new "substantive liability" (*Quigley*,

---

[7] As noted previously, prior legislation had *prospectively* removed the claim presentation requirement for claims that accrued on or after January 1, 2009, but AB 218 removed the requirement *retroactively* as to all claims, no matter when they accrued.

*supra*, 7 Cal.5th at p. 813) for the underlying alleged wrongful conduct. Instead, AB 218 simply waived a condition the state had imposed on its consent to suit. (*Quigley*, at pp. 811–813; *Chapman v. State* (1894) 104 Cal. 690, 697 (*Chapman*).)

    A.    *The* Chapman *Decision*

*Chapman*, *supra*, 104 Cal. 690, is the appropriate lens through which to evaluate the District's gift clause claim. In that case, a state-operated wharf collapsed, allegedly due to the state's negligence, and coal stored on the wharf was lost. (*Id.* at p. 692.) At the time of the loss, such a claim could only be presented to the state board of examiners; the plaintiff did so and the board rejected the claim. (*Ibid.*) Subsequently, the plaintiff brought suit under a statute enacted *after* the loss, providing that persons who have contract or negligence claims " 'against the state, not allowed by the state board of examiners, are hereby authorized, on the terms and conditions herein contained, to bring suit thereon against the state in any of the courts of this state of competent jurisdiction, and prosecute the same to final judgment.' " (*Id.* at p. 693.) The trial court sustained a demurrer to the complaint, and on appeal the state argued "that at the time when the coal belonging to the assignors of the plaintiff was lost, the state was not liable for the damage occasioned by said loss . . . and that the act should not be construed as intended to create any liability against the state for such past negligence." (*Ibid.*) The state relied on the principle that "in the absence of a statute voluntarily assuming such liability, the state is not liable in damages for the negligent acts of its officers while engaged in discharging ordinary official duties pertaining to the administration of the government of the state," and no such statute existed at the time of the loss. (*Ibid.*)

10

The *Chapman* court acknowledged that it would violate the gift clause for the Legislature to retroactively authorize an action based on negligence, because "the [L]egislature has no power to *create* a liability against the state for any such past act of negligence upon the part of its officers." (*Chapman*, *supra*, 104 Cal. at p. 693.)[8]  However, the Court concluded the plaintiff's action was actually founded upon breach of contract, because the state, in consideration of wharfage paid to it, was contractually obligated to exercise ordinary care in preserving the property entrusted to it.  (*Id.* at pp. 694–695.) And, critically, although the state was not liable for its negligence at the time of the loss, the state *was* at the time liable under contract, because "a state is bound by the same rules as an individual in measuring its liability on a contract."  (*Id.* at p. 694.)

The Court explained, "the liability of the state *accrued at the time of its breach*; that is, when the coal was lost through the negligence of the officers in charge of the state's wharf, although there was then no law giving to the plaintiff's assignors the right to sue the state therefor.  At that time the only remedy given the citizen to enforce the contract liabilities of the state, was to present the claim arising thereon to the state board of examiners for allowance, or to appeal to the legislature for an appropriation to pay the

---

[8] As Plaintiff points out, most decisions applying the gift clause involve specific appropriations.  (See, e.g., *Conlin*, *supra*, 99 Cal. 17 [disapproving appropriation to individual for road improvements where there was no contractual liability]; *Bourn v. Hart* (1892) 93 Cal. 321 [disapproving appropriation for state employee injured due to negligence of superior]; *Standard*, *supra*, 42 Cal.App.2d at p. 414 [approving payment of insurance premiums to protect state officers against potential liabilities]; *Alameda Cnty. v. Chambers* (1917) 35 Cal.App. 537 [disapproving legislative appropriation to pay the claims of various persons for losses due to a fire].) But *Chapman* clarifies that providing an opportunity for a plaintiff to assert a claim based on newly created liability can also constitute a gift.

11

same; but the right to sue the state has since been given . . . and in so far as that act gives the right to sue the state upon its contracts, the legislature did not create any liability or cause of action against the state where none existed before.  The state was always liable upon its contracts, and the act just referred to merely gave an additional remedy for the enforcement of such liability, and it is not, even as applied to prior contracts, in conflict with any provision of the constitution." (*Chapman*, *supra*, 104 Cal. at p. 696, emphasis added.)  The Court emphasized, " 'The fact that the state is not subject to an action [on] behalf of a citizen does not establish that he has no claim against the state, or that no liability exists from the state to him.  It only shows that he cannot enforce against the state his claim, and make it answer in a court of law for its liability.  What is made out by this objection is not that there is no liability and no claim, but that there is no remedy.' " (*Ibid.*)

Thus, with respect to the gift clause, *Chapman* focused on whether the underlying conduct for which the Legislature provided a right to sue was conduct for which the state was *liable at the time it occurred*.  (See also *Heron v. Riley* (1930) 209 Cal. 507, 517 ["The legislature has not attempted to create a liability against the state for any past acts of negligence on the part of its officers, agents or employees—something it could not do, and the doing of which would, in effect, be the making of a gift"].)  Notably, the board of examiners presentation requirement in *Chapman* was perfectly analogous to the claim presentation requirement at issue in the present case: as explained by that Court, the challenged act providing the plaintiff a right to bring suit "contemplates that claims against the state shall first be presented to the state board of examiners for allowance, and . . . it is only on claims so presented, and 'not allowed by the state board of examiners,' that the state gives its consent to be sued." (*Chapman*, *supra*, 104 Cal. at p. 697.)  Unlike

12

the present case, *Chapman* did not involve the waiver of that requirement, because the plaintiff had presented its claim to the board. Nevertheless, and critically, the *Chapman* decision not only concluded there is no gift clause violation if liability existed when the alleged misconduct occurred, but the decision *also* did *not* view satisfaction of the claim presentation requirement as an aspect of the relevant underlying liability. Instead, "the liability of the state accrued at the time of its [contractual] breach." (*Id.* at p. 696.) As explained below, this liability has been referred to as the state's "substantive liability." (*Quigley*, *supra*, 7 Cal.5th at p. 813.)

B.      *The Claim Presentation Requirement is Not Part of the District's*
         *Substantive Liability*

Under the GCA, the claims presentation requirement is not part of the District's substantive liability, so retroactive waiver of the requirement does not "create any liability or cause of action against the state where none existed before." (*Chapman*, *supra*, 104 Cal. at p. 696.)

Government Code section 905.8 states, "Nothing in this part imposes liability upon a public entity unless such liability otherwise exists."[9] The associated California Law Revision Commission comment explains that this section "makes clear that the claims presentation provisions do not impose substantive liability; some other statute must be found that imposes liability." (4 Cal. Law Revision Com. Rep. (1963) p. 1001, 1028; see *Gormley v. Gonzalez* (2022) 84 Cal.App.5th 72, 80 (*Gormley*) ["it is proper to look to comments by the Commission, which are persuasive evidence of the intent of the Legislature in enacting the Commission's recommendations"].) Thus the question of the District's "substantive liability" is determined by reference to

---

[9] The section is in Part 3, "Claims Against Public Entities," Government Code section 900, et seq.

13

statutes *outside* the claim presentation requirement. At the time of the alleged sexual misconduct (and today), Government Code section 820, subdivision (a) provided that "a public employee is liable for injury caused by his act or omission to the same extent as a private person," and Government Code section 815.2, subdivision (a) provided that "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." (See also *Dailey v. Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747 ["Under section 815.2, subdivision (a) of the Government Code, a school district is vicariously liable for injuries proximately caused by . . . negligence."]; accord, *C.A. v. William S. Hart Union High Sch. Dist.* (2012) 53 Cal.4th 861, 865–866.) The District does not dispute that those statutes impose liability for the type of conduct alleged in the present case.

The California Supreme Court's decision in *Quigley*, *supra*, 7 Cal.5th 798, is also instructive. In that case the Court addressed, in the context of the GCA, the distinction between "questions of substantive liability" and "the separate question whether public entities are amenable to suit in state courts." (*Id.* at p. 813.) The case involved Government Code section 850.4, which bars public entity liability for injuries "resulting from the condition of fire protection or firefighting equipment or facilities." The issue in the case was "whether this immunity provision constitutes an affirmative defense that may be forfeited if not timely raised or instead serves as a limitation on the fundamental jurisdiction of the courts, such that the issue can never be forfeited or waived." (*Id.* at p. 802.) The Court held the provision was an affirmative defense, because "California law has long distinguished between

14

limitations on the substantive liability of public entities, on the one hand, and limitations on the power of the courts to hear cases involving public entities, on the other." (*Id.* at p. 811.) *Quigley* emphasized the distinction between the state's "substantive liability" for alleged wrongdoing and the state's "consent to suit"—there, to support a conclusion that the immunity provision did not create a "jurisdictional bar" to suit. (*Id.* at pp. 811–813.) As relevant in the present case, it is clear the claim presentation requirement is a condition on the state's consent to suit, and not an aspect of the state's substantive liability.

The District's only response on this point is to assert that "[l]iability against a public entity cannot exist independent of the claim presentation requirement." It is true, of course, that the GCA governs "the liabilities and immunities of public entities and public employees for torts." (*Quigley*, *supra*, 7 Cal.5th at p. 803.) But, although the District appears to argue compliance with the claims presentation requirement is an aspect of its substantive liability, the District fails to explain how that aligns with the Law Review Commission's unambiguous statement that "the claims presentation provisions do not impose substantive liability." (4 Cal. Law Revision Com. Rep. (1963) pp. 1001, 1028.)

Accordingly, the GCA itself makes clear that the District's substantive liability existed when the alleged wrongful conduct occurred; timely presentation of a claim was a condition to waiver of government immunity, but it was not necessary to render the underlying conduct tortious. Because a statute imposing liability on the District existed at the time of the sexual assaults, AB 218 imposes no new substantive liability under *Chapman*'s gift clause analysis.

15

C.  *The* Shirk *and* Bickerdike *Cases Do Not Compel a Different Result*

The District concedes that "statutes of limitations may be extended by the Legislature without violating the constitution—those statutes provide only new remedies." (See *Bickerdike v. State* (1904) 144 Cal. 681, 692 (*Bickerdike*) [waiver of statute of limitations defense does not violate gift clause]; accord, *Mitchell v. Cnty. Sanitation Dist. No. One of Los Angeles Cnty.* (1957) 150 Cal.App.2d 366, 372.)  But the District contends that "critical differences between statutes of limitations and the claim presentation requirement" mandate differing results under the gift clause. Although we agree that the claim presentation requirement and the statutes of limitations are distinct, the District has not shown the differences are material *for purposes of the gift clause*.[10]

The District relies principally on the characterization of the claim presentation requirement in *Shirk*, *supra*, 42 Cal.4th 201.  The *Shirk* Court undertook a straightforward analysis of the plain language of a 2002 statutory amendment to section 340.1 that revived claims barred "solely" by a statute of limitations (*id.* at p. 211) and determined it was not "intended to apply to the . . . claim presentation deadline." (*Id.* at p. 212.)  "[T]he government claim presentation deadline is not a statute of limitations.  Had

---

[10] Plaintiff relies on *Coats*, *supra*, 46 Cal.App.5th 415, which also involved a challenge to AB 218, but the school district there argued retroactive application of the amendments would violate " 'the constitutional prohibition against ex post facto laws.' " (*Id.* at p. 424.)  The court referenced prior decisions upholding revival of claims barred by the statutes of limitations and observed, "The present case, of course, involves revival of a cause of action barred by a claim presentation requirement, not a statute of limitations.  But we are aware of no reason the Legislature should be any less able to revive claims in this context . . . ." (*Id.* at pp. 426–428.)  Because *Coats* did not address the gift clause, it is not decisive in the present analysis.

16

the Legislature intended to also revive in subdivision (c) the claim presentation deadline under the government claims statute, it could have easily said so.  It did not." (*Id.* at p. 213; accord, *Rubenstein, supra*, 3 Cal.5th at p. 907.)[11]

In declining to construe the statutory reference to "the applicable statute of limitations" to encompass the claim presentation requirement, *Shirk* went on to observe that "timely claim presentation is not merely a procedural requirement, but is . . . ' " " 'a condition precedent to plaintiff's maintaining an action against defendant' " ' [citation], and thus an element of the plaintiff's cause of action.  [Citation.]  Complaints that do not allege facts demonstrating either that a claim was timely presented or that compliance with the claims statute is excused are subject to a general demurrer for not stating facts sufficient to constitute a cause of action." (*Shirk, supra,* 42 Cal.4th at p. 209; accord, *DiCampli-Mintz v. Cnty. of Santa Clara* (2012) 55 Cal.4th 983, 990; see also *State of California v. Superior Ct.* (2004) 32 Cal.4th 1234, 1240–1243.)

In comparison, " ' "[s]tatute of limitations" is the collective term applied to acts or parts of acts that prescribe the periods beyond which a plaintiff may not bring a cause of action.' " (*Shirk, supra,* 42 Cal.4th at pp. 211–212.) "[T]he primary purpose of the statutes of limitation is to prevent plaintiffs from asserting stale claims once evidence is no longer fresh and witnesses are no longer available." (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1114.)  A statute of limitations is an affirmative defense that may be forfeited by a defendant (*Save the Agoura Cornell Knoll v. City of*

---

[11] Former Government Code section 905, subdivision (m), exempting from the claim presentation requirement childhood sexual assault claims arising out of conduct occurring on or after January 1, 2009 was added "in direct response to *Shirk.*" (*Coats, supra,* 46 Cal.App.5th at p. 422.)

17

*Agoura Hills* (2020) 46 Cal.App.5th 665, 681) or equitably tolled by a court (*Mojica v. 4311 Wilshire, LLC* (2005) 131 Cal.App.4th 1069, 1073).

*Shirk* stands for the proposition that there are differences between a statute of limitations and the claim presentation requirement, and a statutory reference to one does not include the other. But the Court did not suggest the differences are material in the context of the gift clause (which was not at issue in that case). Nor, of course, did *Shirk* hold that a waiver of the claim presentation requirement *is* a gift but waiver of the statute of limitations is *not*. However, *Bickerdike*, *supra*, 144 Cal. 681, offers more support for the District's position. The Supreme Court reasoned, "The statute of limitations does not . . . go to the substance of the right, but only to the remedy. When the statute has made the defense available to the debtor, his debt has not been extinguished. It still exists, and may be enforced against him unless he chooses to avail himself of the defense afforded by the statute and specially plead it. The payment of such a debt by the debtor is not a 'gift,' in any proper sense of the word, and there is nothing in the constitutional provision invoked that can be held to prohibit the Legislature from paying these claims." (*Id.* at p. 692.) The District argues, "when no timely claim is presented, a plaintiff's claim is extinguished and a limitation on liability arises. . . . A statute creating liability that did not exist (because any prior liability was extinguished when no timely claim was presented) is a 'gift' or 'thing of value' to [Plaintiff]."

However, under *Chapman* the crucial consideration is whether the Legislature has created new substantive liability, or, instead, has simply removed an obstacle to recovery imposed by the state as a condition of its consent to suit that is not an aspect of the underlying substantive liability. Indeed, although *Shirk* characterized the timely presentation of a claim as an

18

"element" of a cause of action in the sense that it must be pled in a complaint, both *Shirk* and *Rubenstein* make clear it is not an aspect of the underlying substantive liability. Thus, *Shirk* held that the cause of action for childhood sexual assault in that case "accrued" at the time of the last molestation. (*Shirk*, *supra*, 42 Cal.4th at p. 210 ["Generally, a cause of action for childhood sexual molestation accrues at the time of molestation."].) *Rubenstein*, *supra*, 3 Cal.5th 903, which addressed the same enactment, made the point even more explicitly. The Court restated the general rule that " 'a cause of action accrues at "the time when the cause of action is complete with all of its elements," ' " and re-affirmed *Shirk's* holding that a childhood sexual assault claim accrues (is " ' "complete with all of its elements" ' ") at the time of the "wrongful act"—"at the latest . . ., the time of the last alleged molestation." (*Rubenstein*, at pp. 911, 913.) Neither *Shirk* nor *Rubenstein* suggested that accrual only occurred after satisfaction of the claim presentation requirement, which would be expected if satisfaction of the requirement were an aspect of the substantive liability—that is, the actual wrongful conduct giving rise to a claim. Of course, before AB 218, compliance with the claim presentation requirement *was* a condition precedent to maintaining an action, but, in effect, so was the filing of an action before expiration of the statute of limitations. (See *Williams v. Johnson* (D.C. Cir. 2015) 776 F.3d 865, 874 ["all procedural requirements are ultimately conditions precedent to some substantive right, else they would be requirements without consequence"].) One must be pled in the complaint and the other is a defense to an action, but neither is a substantive aspect of the underlying tortious conduct for which the State has waived immunity.

In conclusion, while the differences between the statutes of limitations and the claim presentation requirement are material in some circumstances,

19

the District has not shown the distinction is material *under the gift clause.* When the Legislature waives either requirement, it exposes the public treasury to potential causes of action that were otherwise barred. As we understand *Chapman*, the gift clause is violated when conduct that was *not* tortious when it took place is subsequently made tortious with retroactive effect. But the GCA itself and the *Quigley*, *Shirk,* and *Rubenstein* decisions make clear that the District's substantive liability for the alleged sexual assaults exists independently of the claim presentation requirement.[12] Thus, we conclude that no "gift" occurred when the Legislature waived the claim presentation requirement with respect to alleged conduct for which the District was indisputably substantively liable when it happened.

---

[12] Amici curiae Public Justice, et. al., argue for a similar distinction in different language, reasoning, "the District wrongly suggests that it never owed [Plaintiff] anything because the claim-presentation requirement was an 'element' of her 'cause of action.' [Citation.] But this confuses the elements of the District's *liability*—the facts that make it 'obliged by law or equity' to compensate [Plaintiff] (*Liable*, Oxford English Dict. (July 2023))—with the elements of [Plaintiff's] 'cause of action, which is the right to relief in court.' (*Klopstock v. Superior Ct. for City & Cnty. of San Francisco* (1941) 17 Cal.2d 13, 18; *Cause of Action*, Black's Law Dict. (11th ed. 2019) ['[A] factual situation that entitles one person to obtain *a remedy in court* from another person" (italics added)].)" The language used by the courts has not closely tracked the suggested distinction between "liability" and a "cause of action." For example, *Shirk* and *Rubenstein* held that that the "cause of action for childhood sexual molestation accrues at the time of molestation" (*Shirk, supra*, 42 Cal.4th at p. 210; accord, *Rubenstein, supra*, 3 Cal.5th at pp. 911, 913)—even *before* the claim presentation necessary to relief in court. But the notion of "substantive liability" emphasized in this decision is parallel to the notion of "liability" in the argument made by amicus curiae.

III.    *AB 218 Serves a Public Purpose*

As noted previously, an expenditure of public funds that serves a public purpose does *not* violate the gift clause, and "[t]he determination of what constitutes a public purpose is primarily a matter for the Legislature, and its discretion will not be disturbed by the courts so long as that determination has a reasonable basis." (*Carleson*, *supra*, 5 Cal.3d at p. 746; accord, *San Diego Cnty. Dep't of Soc. Servs. v. Superior Ct.* (2005) 134 Cal.App.4th 761, 766; *Scott*, *supra*, 50 Cal.App.4th at p. 1605.)  Even if we had ruled that AB 218 authorizes expenditures within the scope of the gift clause, the expenditures are not "gifts" because they serve a public purpose.

A.    *The Purpose of AB 218*

As noted at the outset of our discussion, prior California decisions have been clear that " 'the intent that illuminates section 340.1 as a whole' " and AB 218 in particular is "an aim 'to expand the ability of victims of childhood sexual abuse to hold to account individuals and entities responsible for their injuries.' " (*Los Angeles Unified*, *supra*, 14 Cal.5th at p. 777; accord, *Quarry v. Doe I* (2012) 53 Cal.4th 945, 1003–1004; see also *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 536 [section 340.1 is "a remedial statute that the Legislature intended to be construed broadly"]; *Coats*, *supra*, 46 Cal.App.5th at p. 430 ["It is apparent from the history of amendments to these statutes . . . that the Legislature has consistently worked to expand the ability of victims of childhood sexual abuse to seek compensation from the responsible parties, on several occasions in direct response to restrictive judicial opinions."]; *Liebig v. Superior Ct.* (1989) 209 Cal.App.3d 828, 834 ["the important state interest espoused by section 340.1 is the increased availability of tort relief to plaintiffs who had been the victims of sexual abuse while a minor"].)  More narrowly, the purpose of "exempting [s]ection

21

340.1 civil actions for childhood sexual abuse from government tort claim requirements" is " ' "to ensure that victims severely damaged by childhood sexual abuse are able to seek compensation from those responsible, whether those responsible are private or public entities." ' " (*A.M. v. Ventura Unified Sch. Dist.* (2016) 3 Cal.App.5th 1252, 1264 [referencing prior amendment to Gov. Code, § 905, subd. (m)].)

The legislative history to AB 218 provides further details. A Senate Judiciary Committee report explains, " 'Childhood sexual abuse has been correlated with higher levels of depression, guilt, shame, self-blame, eating disorders, somatic concerns, anxiety, dissociative patterns, repression, denial, sexual problems, and relationship problems.' Given the horrific damage and life-long trauma that can be caused by childhood sexual assault, these claims are arguably worthy of such revival, despite the general disregard for doing so." (Sen. Com. on Judiciary, Analysis of AB 218 (2019–2020 Reg. Sess.) as amended March 25, 2019, p. 8.) The report continued, characterizing the bill author's argument as follows: "There are complex psychological effects that result from being victimized in this way. In addition, the systematic incidence of childhood sexual assault in numerous institutions in this country and the cover-ups that accompanied them arguably make both a revival period and an extended statute of limitations warranted. This bill provides another chance for victims, who are currently barred from pursing claims based solely on the passage of time, to seek justice." (*Ibid.*) An Assembly Judiciary Committee report included similar reasoning and also referenced proponents' arguments that "the psychological injuries from sexual[] assault emerge later in life and that victims routinely need decades to reach the psychological place where they can come forward" and " '[t]he residual effects of the trauma impact the survivor's education and employment, adding to the

economic loss the individual suffers as a result of the crime.' " (Assem. Com. on Judiciary, Analysis of AB 218 (2019–2020 Reg. Sess.) as introduced January 16, 2019, p. 5 (italics omitted); see also *id.* at p. 1 [referring to "the lifetime of damage that this abuse causes its victims"].)

B.      *Revival of An Unenforceable Claim Can Serve a Public Purpose*

At the outset, we reject the District's blanket assertion that "California precedent firmly establishes that making previously unenforceable claims actionable cannot serve" a public purpose.  In support of that proposition, the District cites *Conlin, supra*, 99 Cal. 17, *Jordan v. Cal. Dept. of Motor Vehicles* (2002) 100 Cal.App.4th 431 (*Jordan*), and *Orange Cty. Found. v. Irvine Co.* (1983) 139 Cal.App.3d 195 (*Orange County*).  The District misreads those authorities.[13]

In *Conlin*, the City of San Francisco had only a "moral or equitable obligation" to provide compensation to a contractor because there was no contractual liability at the time the work was performed.  (*Conlin, supra*, 99 Cal. at p. 22.)  *Conlin* is distinguishable because, as discussed in Part II, *ante*, AB 218 does not create new substantive liability.  Furthermore, in *Conlin* "[t]here was no claim or suggestion that the moneys so directed to be paid were to be devoted to any public purpose." (*City of Oakland v. Garrison* (1924) 194 Cal. 298, 302; accord, *Patrick v. Riley* (1930) 209 Cal. 350, 355–356.)  In *Garrison*, the Court affirmed that, in cases involving the revival of previously unenforceable claims, it is still "the primary and fundamental subject of inquiry . . . whether the money is to be used for a public or a private purpose." (*Garrison*, at p. 302; accord, *Riley*, at p. 356.)

_____

[13] We observe that the District's argument would also lead to a conclusion that any enactment waiving a statute of limitations bar does not serve a public purpose, because any such enactment would also revive a previously unenforceable claim.

23

*Orange County* and *Jordan* are analogous to *Conlin*. In *Orange County*, the court merely held that it would be a gift of public funds for the state to enter into a settlement agreement clearing title to property where the private party receiving the payment knew it had no claim to the property. (*Orange County*, *supra*, 139 Cal.App.3d at pp. 200–201.) The payment was not "the settlement of a good faith dispute," and no other public purpose was identified. (*Id.* at p. 200.) Similarly, in *Jordan*, the court of appeal concluded an arbitration award violated the gift clause because it awarded fees in excess of the maximum authorized by the Legislature in connection with the action. (*Jordan*, *supra*, 100 Cal.App.4th at pp. 438–442, 450.) The court stated that awarding fees in excess of the state's maximum exposure was "akin to payment of a wholly invalid claim and violates the gift clause." (*Id.* at p. 450.) In contrast to *Conlin, Orange County*, and *Jordan*, which involved only discrete payments to private parties with no larger public goal, in the present case the Legislature sought to provide relief to a disadvantaged group of persons. As explained below, that is a sufficient public purpose under the gift clause.

C. *Courts Have Regularly Concluded That Expenditures on Behalf of Disadvantaged Groups Serve a Public Purpose*

"[A] public purpose embodies not only expenditures which are necessary for the continued existence of government, but also those 'which may tend to make that government subserve the general well-being of society, and advance the present and prospective happiness and prosperity to the people.'" (*San Diego Cnty. v. Hammond* (1936) 6 Cal.2d 709, 722; see also *Carleson*, *supra*, 5 Cal.3d at p. 746 ["the Legislature could reasonably have determined that such legislation was in the best interests of the general public welfare"]; *Allied Architects' Ass'n of Los Angeles v. Payne* (1923)

24

192 Cal. 431, 439 ["[A] gift as implying a gratuity, that is, something for nothing, . . . is the "gift" meant by the constitution," and the "return" may be "incorporeal and intangible"]; *Standard*, *supra*, 42 Cal.App.2d at p. 414 ["The legislature is vested with a large discretion in determining what is for the public good and what are public purposes for which public moneys can be rightfully expended and that discretion cannot be controlled by the courts except when its action is clearly evasive."].)

Employing such a "general public welfare" rationale, a "wide variety of welfare and other social programs have been upheld against constitutional challenge" under the gift clause. (*Carleson*, *supra*, 5 Cal.3d at p. 746; see also *Alameda Cnty. v. Janssen* (1940) 16 Cal.2d 276, 282 ["This court has frequently upheld the expenditure of funds by the state or its subdivisions for the benefit of individuals as for a 'public purpose.' "].) *Carleson* involved the state's "plan for aid and services to needy families with children" (*Carleson*, at p. 734), and *Janssen* involved "the release of liens held against the property of indigent recipients of aid" (*Janssen*, at p. 282). (See also, e.g., *Elliott, supra* 17 Cal.3d at pp. 583–584 ["There is considerable case law supporting the Agency's contention that the Legislature acted reasonably in concluding that decent housing for the affected persons serves a public purpose."]; *La Fuente, supra* 20 Cal.2d at p. 877 ["The care and relief of aged persons who are in need clearly may be a special matter of state concern in promoting public health and welfare."]; *City & Cnty. of San Francisco v. Collins* (1932) 216 Cal. 187, 190 [approving bonds for "the relief of [the City's] indigent sick and dependent poor"].)

We believe AB 218 may be sustained under the reasoning of the above cases. The District does not dispute "the horrific damage and life-long trauma that can be caused by childhood sexual assault" (Sen. Com. on

25

Judiciary, Analysis of AB 218, *supra*, at p. 8); nor does the District deny that AB 218 was enacted to provide relief to such victims by providing an opportunity for them to obtain compensation from the private *and* public entities that employed their abusers.  We believe the Legislature's purpose to aid the disadvantaged group of childhood sex assault victims in the present case is analogous to the intent to offer relief to other disadvantaged groups in the cases in the preceding paragraph and the other cases relied upon in those decisions.[14]

One additional decision, *Scott, supra*, 50 Cal.App.4th 1597, is instructive.  There, the Legislature enacted a statute retroactively extending the time period during which taxpayers could claim an exclusion from reassessment for transfers of ownership of real property from parents to children.  (*Id.* at p. 1600.)  The enactment retroactively excused compliance with a constitutional provision "that the failure in any year to claim an exemption or classification which reduces a property tax amounts to a waiver as a matter of law for that year."  (*Ibid.*)  The court of appeal rejected a County Tax Assessor's claim that the statute violated the gift clause, concluding that the enactment served a public purpose.  (*Id.* at pp. 1605–1606.)  In particular, providing " 'relief of hardship to' " a "limited class of persons" (taxpayers who "inadvertently lost their parent-child exclusion") was a " 'valid public purpose.' "  (*Id.* at pp. 1604–1605.)  By analogy, providing

---

[14] The District cites to *San Diego Cnty. Dep't of Soc. Servs. v. Superior Ct., supra*, 134 Cal.App.4th 761, where the court held it was a prohibited gift of public funds for a juvenile court to order the "use of County funds to pay independent counsel to investigate the possibility of filing a civil suit on behalf of a dependent child."  (*Id.* at p. 766.)  But that case did not involve a legislative determination of public purpose to offer relief to a disadvantaged group.  Indeed, the juvenile court's order was contrary to the court's local rules.  (*Id.* at p. 767.)

relief to a class of victims of childhood sexual assault who failed to file timely claims also serves a public purpose.

In sum, in seeking to aid victims of childhood sexual assault, the public purpose underlying AB 218 is not fundamentally different from the public purpose involved in any of a number of other enactments providing assistance to other disadvantaged classes of persons "in the best interests of the general public welfare." (*Carleson*, *supra*, 5 Cal.3d at p. 746.) The main difference is the mechanism of expenditure of the public funds: many programs provide direct or indirect subsidies from the public treasury, while AB 218 ensures any public expenditures will be made by entities accountable for the victims' injuries.

The District argues that AB 218 is different because it "does not benefit *any* recognizable 'population' " . . . The beneficiaries of AB 218 are not united by any protected characteristic (like race or creed), nor by geography, property ownership, financial condition, or the like." We disagree. The class of persons benefited by AB 218 is sufficiently defined, even if victims must prove their eligibility for compensation in individual lawsuits. The District cites no authority to the contrary.

The District has not shown AB 218 does not serve a valid public purpose.[15]

D.     *The Policy Arguments of the District and Amici Curiae are Misplaced*

The District and the amici curiae who filed briefs in support of the District also argue at length that AB 218 is bad public policy. The District

---

[15] The parties debate whether AB 218 also deters future sexual assaults. We need not and do not address that issue because we conclude AB 218 serves a public purpose regardless of any such deterrence.

argues, "AB 218 affirmatively harms the public interest by precipitating an unprecedented wealth transfer from public schools to private individuals, imperiling the solvency of numerous school districts, and threatening the constitutional education rights of children now attending public schools." The amici curiae who filed briefs in support of the District are, for example, various public entities facing liability under AB 218, policy groups representing public schools in California, and joint powers authorities (JPAs).[16]  The District summarizes the arguments in those briefs as follows: "Amici note the thousands of claims filed pursuant to AB 218, and emphasize the resulting astronomical costs"; "For the most part, these costs will not be shifted to private insurers"; "Public schools that had insurance coverage . . . when much of the alleged abuse occurred—either cannot locate their insurance policies, or their insurers went out of business"; "Many school districts are protected instead by joint powers authorities, an alternative to insurance.  JPAs operate effectively when they can plan ahead; claim notices (gathered from the reporting requirement in the [GCA]) are the foundation of their actuarial calculations"; and "there is little reason to hope that public school districts can adequately defend themselves in individual cases.  They cannot locate important witnesses and documents because of the age of the allegations. . . .  Also, plaintiffs may be unable to identify alleged

---

[16] The amici curiae are listed in footnote 3, *ante*.  "Joint powers authorities, in which two or more municipalities join together to exercise any power that each has the power to exercise individually, have been sanctioned by the Joint Exercise of Powers Act, Government Code Sections 6500, et seq., since 1949.  The municipalities have the power to insure, either through self-insurance or the purchase of a commercial policy, or both, against a broad range of liabilities.  [Citations.]  They can also insure through participation in joint powers pooling arrangements." (*City of S. El Monte v. S. Cal. Joint Powers Ins. Auth.* (1995) 38 Cal.App.4th 1629, 1632.)

perpetrators, compounding the difficulties for public entities trying to defend against such claims."

The concerns raised by the District and amici curiae are legitimate considerations that would have been appropriate considerations for the Legislature in deciding whether to enact AB 218.[17]  Indeed, those concerns *were* considered by the Legislature.  A Senate Judiciary Committee report observed that the bill was "opposed by various associations that would likely be affected by these revived or extended claims periods."  (Sen. Com. on Judiciary, Analysis of AB 218, *supra*, at p. 1.)  In particular, "[a] coalition of groups, including the Schools Excess Liability Fund, the Schools Insurance Authority, the Association of California School Administrators, the California Association of Joint Powers Authorities, and the California Association of School Business Officials, [wrote] in opposition: [¶] 'As drafted, AB 218 exposes local public schools and others, to claims of abuse going back 40 years ago and longer.  It will be impossible for employers to effectively defend against these claims when evidence is likely gone, witnesses have moved or passed away, and there has been a turnover of staff.  With these barriers, schools will be unable to adequately respond to these claims.  This failure will

---

[17] Plaintiff disputes the assertions made by the amici curiae in support of the District, arguing "Amici's own documents show that since AB 218 was signed in 2019, JPAs have forecasted potential liability, increased member assessments, and pooled resources sufficient to cover claims filed during AB 218's revival period.  Further, public entities already enjoy special protections if faced with a large judgment that allows school districts to make periodic payments over 10 years and at significantly lower interest rates than the already discounted 7% applicable to public entity defendants.  (Gov. Code, § 970.6, subd. (a); § 984, subd. (d).)  School districts may also issue judgment obligation bonds pursuant to Gov. Code, § 975.2 et seq. to satisfy any duty to pay uncovered liabilities."  We need not and do not resolve the factual disputes about the consequences of AB 218.

29

result in diversion of funding intended to educate students and serve communities to financing increased legal costs, whether or not the claim is valid. This is particularly troubling when considering that AB 218 would permit the recovery of treble damages . . . ." (*Id.* at p. 12.)[18]  With respect to the treble damages provision, the coalition argued, "Coupled with the other provisions of the bill, this component may result in added billions of dollars in costs to schools to settle claims that are decades old and occurred under school boards and administrators that are long gone, with little evidence or ability to defend against them.  With little to no evidence available, school districts will be forced to settle a lawsuit resulting in the diversion of critical education funds and services for today's students." (*Id.* at p. 13.)

Similarly, an Assembly Judiciary Committee Report stated that opponents of the bill—"public and private school officials, insurance associations, and joint powers associations"—argued, "it is very difficult to defend against old claims when records and witnesses may be unavailable, insurance may no longer be available, and the cost of defending these actions could be astronomical and could prevent the impacted entities from being able to support their main work." (Assem. Com. on Judiciary, Analysis of AB 218, *supra*, p. 2, italics omitted; see also *id.* at pp. 9–10.)  The opponents further argued, " 'AB 218 will create new liability that will be funded in large part by public dollars that would otherwise go directly to funding education.' " (*Id.* at p. 10.)  The report acknowledged opponents' concerns and the request to retain the claims presentation bar, but observed, "Obviously, the flip side of the burden of the cost of these claims on schools, churches, and

_____

[18] All but one of the groups mentioned in the report as opposing AB 218 are amicus curiae in the present proceeding (see fn. 3, *ante*), making similar arguments in opposition to AB 218.

athletic programs that protected sexual abusers of children is the lifetime damage done to those children." (Assem. Com. on Judiciary, Analysis of AB 218, *supra*, at pp. 10–11.)

Another committee analysis expressly acknowledged the potential fiscal impact on schools, referencing "Unknown, potentially-major . . . costs to local entities and school districts to the extent litigation is successfully brought outside the current statute of limitations and/or the entities are liable for damages. If payouts are large enough, this measure could lead to cost pressures to the state to stabilize a local jurisdiction or district." (Sen. Rules Com., Analysis of AB 218 (2019–2020 Reg. Sess.) as amended August 30, 2019, p. 6.)

This court does not know the full scope of the information provided to legislators in opposition to AB 218, but it is clear that opponents had both an opportunity and incentive to make their arguments to the Legislature. The District and amici curiae cite no authority that it is appropriate for this court to make complicated factual determinations regarding the conflicting policies debated in the Legislature about the effects of the legislation, or to balance the negative consequences on public finances with the positive benefits of giving relief to persons who were sexually assaulted by public employees when they were children. To the contrary, " 'Courts do not sit as super-legislatures to determine the wisdom, desirability or propriety of statutes enacted by the Legislature.' [Citation.] 'In reviewing the constitutionality of legislation, it must be remembered that "[c]ourts have nothing to do with the wisdom of laws . . ., and the legislative power must be upheld unless manifestly abused so as to infringe on constitutional guaranties. . . . The only function of the courts is to determine whether the exercise of legislative power has exceeded constitutional limitations." ' " (*In re J.C.* (2017) 13

31

Cal.App.5th 1201, 1207–1208; see also *People v. Hardin* (2024) 15 Cal.5th 834, 864 ["It is not for us to pass judgment on the wisdom or desirability of [the Legislature's] policy choices."]; *Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1299 ["[I]t is for the Legislature to weigh the competing policy considerations."]; *20th Century Ins. Co. v. Superior Ct.* (2001) 90 Cal.App.4th 1247, 1263–1264 ["[I]t is the Legislature, not the courts, which is the proper forum for resolving the competing policy interests involved in the decision to revive a time-barred claim"].) Accordingly, this court will not address in detail amici curiae's "voluminous" briefing "addressed to the wisdom of [the statute], a topic outside our purview." (*Claypool v. Wilson* (1992) 4 Cal.App.4th 646, 659.)

Ironically, the District asserts it "is not asking this Court to make any policy decisions in this case or to weigh in on whether AB 218 is a good law." Unfortunately, that is exactly what the District and amici curiae ask this court to do in arguing that the potential negative consequences of AB 218 outweigh its benefits. As the court recognized in *Coats, supra,* 46 Cal.App.5th at page 429, "In [AB 218], the Legislature has again attempted to balance the competing concerns of protecting public entities from stale claims and allowing victims of childhood sexual abuse to seek compensation. This time, the Legislature came to a different conclusion, with an express revival provision for claims against public entities as well as those against private defendants." (See also *Los Angeles Unified, supra,* 14 Cal.5th at pp. 769–770 [the GCA "as a whole reflects an awareness that although tort claims can draw from public coffers and may impose additional burdens on taxpayers, to the extent these awards are necessary to compensate plaintiffs with meritorious claims for their injuries, they simply reflect the loss-distributing function of tort law at work"].) The District has not shown the

Legislature lacked a "reasonable basis" for its determination that AB 218 serves a public purpose. (*Carleson, supra*, 5 Cal.3d at p. 746.)[19]

IV.    *The District Lacks Standing to Assert Its Due Process Claims*

The District also contends that "resurrecting extinguished claims that are barred by a lapsed claim presentation deadline" violates its right to due process under both the federal and California Constitutions.[20]  The District lacks standing to challenge AB 218 on those grounds.

In *Star–Kist Foods, Inc. v. County of Los Angeles* (1986) 42 Cal.3d 1 (*Star–Kist*), the Supreme Court noted "the well-established rule that subordinate political entities, as 'creatures' of the state, may not challenge state action as violating the entities' rights under the due process or equal protection clauses of the Fourteenth Amendment or under the contract clause of the federal Constitution.  'A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator.' " (*Id.* at p. 6; accord, *People v. Carter* (2023) 97 Cal.App.5th 960, 976 (*Carter*); *City of Grass Valley v. Cohen* (2017) 17 Cal.App.5th 567, 592 (*Cohen*); *San Diego Cnty. Water Auth. v. Metro. Water Dist. of S. California* (2017) 12 Cal.App.5th 1124, 1162 (*San Diego Cnty.*); *City of San Jose v.*

---

[19] We are not unsympathetic to the concerns expressed by the District and amici curiae supporting the District.  One amicus curiae brief dramatically describes AB 218 as "a massive intergenerational transfer of public moneys away from the current generation of children."  But, to the extent that AB 218 excessively strains school district budgets or has other negative unintended consequences, recourse is with the Legislature.

[20] The District did not assert either of its due process claims below or in the Petition.  Nevertheless, we "exercise our discretion to decide a pure question of law where the facts are undisputed." (*McKneely v. Superior Ct.* (2023) 91 Cal.App.5th 1232, 1241.)

*Sharma* (2016) 5 Cal.App.5th 123, 148; see also *Santa Monica Cmty. Coll. Dist. v. Pub. Emp. Rels. Bd.* (1980) 112 Cal.App.3d 684, 690 [referring to "the long line of cases which hold that a public entity, being a creature of the state, is not a 'person' within the meaning of the due process clause, and is not entitled to due process from the state"].)[21]

" 'The same reasoning applies to the due process protections afforded under the California Constitution.' " (*City of Burbank v. Burbank Glendale Pasadena Airport Authority* (1999) 72 Cal.App.4th 366, 380, quoting *Board of Supervisors v. McMahon* (1990) 219 Cal.App.3d 286, 296–297; see also *Reclamation Dist. No. 1500 v. Superior Ct. in & for Sutter Cnty.* (1916) 171 Cal. 672, 680 [rejecting takings claim under California Constitution and referring to "the proposition that the county (or reclamation or school district) is a mere political agency of the state, that it holds its property on behalf of the state for governmental purposes, and that it has no private proprietary interest in such property as against the state"]; *Carter*, *supra*, 97 Cal.App.5th at p. 976 [relying on *Star–Kist* to reject claims under the "United States and California Constitutions' contracts clauses"]; *McMahon*, at p. 297 [citing cases].) The District provides no reason why it has standing to assert a due process claim under the California Constitution where it may not do so under the federal Constitution.

" 'A public school district is a political subdivision of the State of California.' " (*K.M. v. Grossmont Union High Sch. Dist.* (2022) 84 Cal.App.5th 717, 752; see also *California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 243 ["the Legislature established school

---

[21] "The term 'standing' in this context refers not to traditional notions of a plaintiff's entitlement to seek judicial resolution of a dispute, but to a narrower, more specific inquiry focused upon the internal political organization of the state . . . ." (*Star-Kist*, *supra*, 42 Cal.3d at pp. 5–6.)

districts as political subdivisions and delegated to them [the] duty" of providing a public school system]; *Butt v. State of California* (1992) 4 Cal.4th 668, 680–681 [" 'Local districts are the State's agents for local operation of the common school system' "].)  The District does not dispute that point, and it has no substantial answer to the rule articulated in *Star–Kist* and applied repeatedly since then.  The District points out that *Star–Kist* exempted certain constitutional claims from the "no standing" rule, but the exemption does not encompass the District's due process claims.  In particular, the Court explained, "[p]rovisions like the Fourteenth Amendment and the contract clause 'confer fundamental rights on individual citizens'; the supremacy clause, in contrast, 'establishes a structure of government which defines the relative powers of states and the federal government.'  [Citations.] Political subdivisions cannot assert 'constitutional rights which are intended to limit governmental action vis-a-vis individual citizens' but may invoke the supremacy clause to challenge preempted state law." (*Star–Kist*, *supra*, 42 Cal.3d at p. 8.)  At issue in *Star–Kist* was a claim based on the federal constitutional commerce clause, which "resembles the supremacy clause in that it, albeit indirectly, 'defines the relative powers of states and the federal government.' " (*Id.* at p. 9.)  The District's due process claims are not analogous to the supremacy and commerce clause claims exempted by *Star–Kist*.  (See *Cohen*, *supra*, 17 Cal.App.5th at p. 592 [emphasizing limited scope of the *Star–Kist* exception]; *San Diego Cnty.*, *supra*, 12 Cal.App.5th at p. 1162 [same].)

In support of its position, the District also cites to *Rogers v. Brockette* (5th Cir. 1979) 588 F.2d 1057, *Zee Toys, Inc. v. County of Los Angeles* (1978) 85 Cal.App.3d 763, and *Board of Ed. of Central School Dist. No. 1 v. Allen* (1968) 392 U.S. 236.  None of those decisions are contrary to or undermine

35

the rule articulated in the *Star–Kist* decision. *Rogers* was a supremacy clause case, and it stated that federal courts have "invariably" held municipalities may not assert due process claims against states. (*Rogers*, at pp. 1067–1068.) *Zee Toys* was a commerce clause case relating "to the national interest in observing the boundaries of state and federal power." (*Zee Toys*, at p. 778.) Finally, *Allen* permitted school board members to assert a First Amendment challenge to a state law on the basis that they had "a 'personal stake in the outcome' of [the] litigation." (*Allen*, at p. 241 & fn. 5.) *Allen* did not question the "well-established rule" described in *Star–Kist* or any of the United States Supreme Court cases cited therein. (*Star–Kist*, *supra*, 42 Cal.3d at p. 6.)

Finally, the District cites to *Washington v. Seattle School Dist. No. 1* (1982) 458 U.S. 457, with the bold but erroneous assertion that the decision "signaled that school districts are different and not subject to the political-subdivision rule." That case did not suggest that school districts are "different" and did not consider the issue in *Star–Kist*: whether a political subdivision possesses " 'privileges or immunities under the federal constitution which it may invoke in opposition to the will of' " the state. (*Star–Kist*, *supra*, 42 Cal.3d at p. 6.) Instead, in *Seattle School District* the Supreme Court allowed a local school board seeking to defend a busing integration program to challenge a state initiative on equal protection grounds because the initiative "use[d] the racial nature of an issue to define the governmental decisionmaking structure, and thus impose[d] substantial and unique burdens on racial minorities." (*Seattle School District*, at p. 470.) Therefore, the decision in that case was grounded on the equal protection rights of the racial minorities adversely affected by the initiative, *not* on any equal protection right held by the school district vis-à-vis the state. The same is true of other cases cited by the District. (See *Romer v. Evans* (1996)

36

517 U.S. 620, 625 [municipalities challenging state constitutional amendment based on equal protection rights of gays and lesbians]; *Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 329 (*Coral Construction*) [considering claim by city that statute violated citizens' equal protection rights]; *Cent. Delta Water Agency v. State Water Res. Control Bd.* (1993) 17 Cal.App.4th 621, 629 [water agencies had standing to bring action contending statute "violate[d] the [equal protection] rights of the agencies' constituent water users"].)[22]  It is also irrelevant that *Seattle School District* held that the school district plaintiffs could recover attorney's fees from the state defendant; the Court so held simply because the plaintiffs were "plainly parties covered by the language of the fees statutes." (*Seattle School District*, at p. 487, fn. 31.)  In any event, the Court nowhere addressed the standing issue presented in *Star–Kist* and in the present case. (See *Maplebear, Inc. v. Busick* (2018) 26 Cal.App.5th 394, 406 [" '[i]t is axiomatic that cases are not authority for propositions not considered' "]; *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank* (9th Cir. 1998) 136 F.3d 1360, 1363 ["*Seattle School District* does not constitute binding authority with respect to standing"].)[23]

---

[22] For the first time at oral argument, the District argued it has standing to assert the constitutional rights of current students negatively impacted by the District's potential liability under AB 218.  That argument has been forfeited. (*Goldstein v. Superior Ct.* (2023) 93 Cal.App.5th 736, 746, fn. 8.)

[23] The same is true of other cases cited by the District and amicus curiae County of Los Angeles that are both inapposite and do not consider standing.  (See, e.g., *Romer v. Evans*, *supra*, 517 U.S. 620; *Coral Construction*, *supra*, 50 Cal.4th 315; *Midway Venture LLC v. County of San Diego* (2021) 60 Cal.App.5th 58; *Carr v. State of California* (1976) 58 Cal.App.3d 139.)  Another case, *Bd. of Natural Resources of State of Wash. v. Brown* (9th Cir. 1993) 992 F.2d 937, addresses the standing of counties to

The District lacks standing to assert a due process challenge to AB 218 under either the federal or California Constitutions.

DISPOSITION

The District's petition for writ of mandate is denied.  Costs are awarded to Plaintiff.

SIMONS, J.

We concur.

JACKSON, P. J.
BURNS, J.

(A169314)

---

challenge a *federal* enactment, which does not implicate "the well-established rule that subordinate political entities, as 'creatures' of the state, may not challenge state action" on due process or equal protection grounds.  (*Star–Kist, supra*, 42 Cal.3d at p. 6.)

## West Contra Costa USD v. Superior Court (A169314)

Trial Judge:  Hon. John P. Devine

Trial Court:  Contra Costa County Superior Court

Attorneys:

   Horvitz & Levy LLP, David M. Axelrad and Peder K. Batalden; Fagen Friedman & Fulfrost LLP, Roy A. Combs, David R. Mishook, and Rami B. Noeil for Petitioner.

   Greines, Martin, Stein & Richland LLP, Edward L. Xanders and Alana Rotter for Schools Association for Excess Risk, Northern California Regional Liability Excess Fund, Southern California Regional Liability Excess Fund, and Statewide Association of Community Colleges as Amici Curiae on behalf of Petitioner.

   Atkinson, Andelson, Loya, Ruud & Romo, Mark Bresee, Alyssa Ruiz de Esparza, and Juliana Duran; California School Boards Association, Kristin Lindgren, Bode Owoyele, and Dana Scott for California School Boards Association and its Education Legal Alliance as Amicus Curiae on behalf of Petitioner.

   Griffith & Thornburgh, LLP, Craig Price, Felicita A. Torres, and Austin S. Payne for Montecito Union School District and Carpinteria Unified School District as Amici Curiae on behalf of Petitioner.

   Cole Huber LLP, Derek P. Cole for Schools Excess Liability Fund, California Association of Joint Powers Authorities, and Public Risk Innovations, Solutions, and Management as Amici Curiae on behalf of Petitioner.

   Fozi Dwork & Modafferi, LLP, Daniel S. Modafferi for Alliance of Schools for Cooperative Insurance Programs as Amicus Curiae on behalf of Petitioner.

Lozano Smith, Sloan R. Simmons and Adam M. Vasquez for California Association of School Business Officials as Amicus Curiae on behalf of Petitioner.

Matheny Sears Linkert & Jaime, LLP, Richard S. Linkert and Madison M. Simmons for Schools Insurance Authority as Amicus Curiae on behalf of Petitioner.

Miller Barondess, LLP, Mira Hashmall, Nadia A. Sarkis, and Eleanor S. Ruth for County of Los Angeles as Amicus Curiae on behalf of Petitioner.

Orbach Huff & Henderson LLP, David M. Huff, Enrique M. Vassallo, JiEun Choi, and Julia A. Wolpert for Compton Unified School District as Amicus Curiae on behalf of Petitioner.

Davis, Bengtson & Young, Eric J. Bengtson and Bruce D. MacLeod for East Side Union High School District, San Mateo Union High School District, Santa Clara Unified School District, Oakland Unified School District, Los Gatos-Saratoga Union High School District, Oak Grove School District, and Berryessa Union School District as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Boucher LLP, Raymond Boucher, Shehnaz M. Bhujwala, and Amanda Walbrun; Esner, Chang, Boyer & Murphy, Holly N. Boyer for Real Party in Interest.

Alan Charles Dell'Ario; DeMarco Law Firm, Anthony M. DeMarco for Consumer Attorneys of California as Amicus Curiae on behalf of Real Party in Interest.

Public Justice, Sean Ouellette and Adele P. Kimmel for Public Justice, Child USA, Equal Rights Advocates, and National Center for Victims of Crime as Amici Curiae on behalf of Real Party in Interest.